JOHN J. LEWIS, an Infant, by JEANNETTE L. LEWIS, his Guardian ad
Litem, Respondent, *v.* THE LONG ISLAND RAILROAD COMPANY,
Appellant.

*Negligence — collision with a coach at a railroad crossing — failure to give signals —*
*insufficient signboard.*

A coach, driven along a macadamized highway, crossed by a railroad track at a
point where the train dodged out from behind a dense piece of forest and
crossed the highway upon tracks planked in such a manner that a person
approaching them could scarcely discover any break in the smooth surface of
the road, was run into by a train approaching this crossing upon a down grade,
with steam cut off from the engine, without the customary blowing of the
whistle and with but a slight ringing of the bell, not calculated to warn persons
of the approach of the train. The track was obscured from the view of those
approaching it for a distance of a quarter of a mile until they came within
thirty feet of the track, and the signboard, indicating a railroad crossing, sup-
ported upon a single pole and partially obscured by intervening telegraph
poles, was not of the conspicuous character required by the law.

In an action brought by a passenger on the coach, injured by such collision, who
had no knowledge of the highway, nor any reason to apprehend danger; who
was seated fifteen feet away from the driver of the coach, and had no authority
over him as regards the management of the horses, a verdict was rendered in
favor of the plaintiff.

*Held,* that the Appellate Division was not justified in disturbing the finding of
the jury, or in reversing the order of the court, which denied a motion for a
new trial.

APPEAL by the defendant, The Long Island Railroad Company,
from a judgment of the Supreme Court in favor of the plaintiff,
entered in the office of the clerk of the county of Kings on the 22d
day of December, 1897, upon the verdict of a jury for $1,000, and
also from an order entered in said clerk's office on the 4th day of
January, 1898, denying the defendant's motion for a new trial made
upon the minutes.

*Benjamin F. Tracy* [ *William J. Kelly* with him on the brief],
for the appellant.

*Albert A. Wray,* for the respondent.

WOODWARD, J. :

On the 31st day of May, 1897, a legal holiday, the plaintiff, in
company with twenty other young people connected with the Greene

Avenue Baptist Church, Brooklyn, went for a pleasure drive to Valley Stream, Long Island, distant fifteen or sixteen miles from the city. The conveyance, an old-fashioned tally-ho coach, drawn by six horses, two abreast, was hired of Henry Hamilton, a liveryman, who undertook to furnish the party a competent driver. The conveyance was secured by a committee of the society (the Alpha Delta Theta), and was paid for before the trip commenced. The driver, who appears to have been a reasonably competent man, was not familiar with the road, and the plaintiff in this action had never been over it. When near their destination, and after the exuberance of a coaching party had given way to the demands of hunger, and while the members of the party were considering a location in which to eat the luncheon which had been provided by the young ladies, the coach was drawn upon a track of the defendant company, and in the collision which followed several were killed or seriously injured, and this action is brought to recover the damages sustained by this plaintiff, who was thrown a distance of more than 100 feet and seriously injured.

It appears from the diagrams, and from the evidence submitted, that the point at which this accident occurred is admirably adapted for accidents of this character. The highway is macadamized, and at the point where the train dodges out from behind a dense piece of forest and crosses this way, the tracks are planked in such a manner that a person approaching can scarcely discover any break in the smooth surface of the road. The sign indicating a railroad crossing is not such a conspicuous signboard as the law requires, but a comparatively insignificant single-pole affair, standing by the side of the roadway, and partially obscured by intervening telegraph poles. The track is down grade from the direction in which the train which caused this collision was coming; and the train approached the crossing with steam shut off, and, as appears from a preponderance of evidence, without the customary blowing of the whistle, and with a lazy and indifferent ringing of the bell, so that it was not calculated to warn persons of the approach of the train; and it seems to be established, at least to the satisfaction of the jury, that the danger whistle, which is expected to blow on the approach of trains to a situation that is dangerous, did not, on this occasion, sound any warning. The track is obscured from the view of those approach-

ing from the Brooklyn side, in the direction from which the train in question approached, for a distance of a quarter of a mile, until within thirty feet of the track. It was into this perilous situation that this Brooklyn tally-ho party, without any knowledge of the highway, and without any reason to apprehend danger, was driven; and this court is asked to interpose and grant a new trial because the plaintiff in this action, who was seated fifteen feet from the driver, and who had no authority over him in so far as the management of the horses was concerned, did not exercise a greater degree of care in approaching a railroad to him unknown, in a portion of the country with which he was entirely unfamiliar, and where he had no greater reason to apprehend danger than on any other part of the road he had traveled.

"It is a general rule," say the court in the case of *Dolan* v. *Delaware & Hudson Canal Co.* (71 N. Y. 285), "that care commensurate with the danger must be exercised, and it is also a general rule that it is the province of the jury, and not of the court, to determine whether such care has been exercised. Courts have held that a person, in approaching a railroad crossing, must employ his senses of hearing and seeing to avoid danger; and, if not done, he is negligent as matter of law. Beyond this courts cannot go, without usurping the province of the jury to determine questions of fact." We are clearly of the opinion that the case at bar comes peculiarly within this rule, although it is difficult to determine by what right the law might assume to say that a person approaching an unknown railroad crossing, masked as this one seems to have been, would be charged with any higher degree of prudence and caution than would be ordinarily necessary upon the highway. A stranger traveling upon the highway has a right to assume that places of a peculiarly dangerous character will be pointed out to him, and in the absence of such warning he cannot be said to be negligent, as a matter of law, if he exercises that degree of prudence and care which an ordinarily prudent man would exercise under the circumstances; and whether the railroad company had given proper notice of this dangerous crossing, and whether he had exercised proper care in approaching the crossing, are questions of fact peculiarly within the province of the jury.

A somewhat careful examination of the cases cited in behalf of

the defendant fails to afford any just ground for the action which we are requested to take. In the case of *Heaney* v. *Long Island R. R. Co.* (112 N. Y. 122), cited as an authority upon the question of the duty of the railroad company in ringing its bell, whistling, etc., the facts are so entirely different as to bear no analogy to the case at bar. In that case an old man had passed through an aperture in the fence, guarding the line of railroad, and had crossed one track immediately behind a passing train, while yet the next track was obscured by smoke; and, while so upon the tracks of the defendant company, was struck by a passing train and killed. In that case there was no obligation on the part of the company to ring its bell or to blow its whistle; he entered the inclosure and stepped upon the tracks at his own peril; and the question of whether or not there were any warnings had no bearing upon the case.

"Some acts are so clearly free from imputation of that sort," say the court in the case of *Grippen* v. *New York Central R. R. Co.* (40 N. Y. 34), in discussing negligence, "that it would be the duty of the court, as matter of law, to hold that they constituted no proof of negligence. While, when the facts are themselves in dispute, or upon the proofs their wisdom or efficiency is doubtful, the jury must decide whether negligence was proved." This, we believe, is a fair statement of the rule; and the trial court acted within its provisions in submitting this case to the jury; and while the plaintiff may have had some cause for complaint at the charge of the court, the defendant has no such justification for its appeal. The case was submitted under a charge which not only imposed upon the plaintiff the duty of proving the negligence of the company, and the lack of negligence on his own part, but of establishing a degree of caution in approaching this crossing, the presence of which was unknown to him, which would not be necessary in the ordinary traveler; and whatever may be the opinion of this court as to the rights which this plaintiff would have under this ruling, were he likewise the appellant, it is certain that the defendant has no just reason to complain.

In the case of *Harty* v. *Central R. R. Co. of New Jersey* (42 N. Y. 468), relied upon by the defendant, the plaintiff was injured while trespassing upon the line of the railroad 200 feet from a crossing; and it was held that the regulation requiring the ringing of the bell or the blowing of a whistle on approaching the crossing,

was not for the protection of persons trespassing within the warning limit of the crossing; and the fact that there was no such warning did not give the plaintiff any rights in an action for negligence. In the case at bar it was established that the bell was sounded for a considerable distance before reaching the crossing; but it appeared also that it was tapped very lightly, the clapper barely touching the rim of the bell, and giving out little sound. There was some testimony to the effect that the whistle was blown at the proper point, but this was fully overcome by the evidence of those who were watching the party, and who were in a position to have noticed the whistle had it been sounded; and there was such a conflict of evidence upon this very material point that it would have been little less than usurpation for the court to have refused to submit the question to the jury.

In the case of *Koehler* v. *The Rochester & Lake Ontario Railway Co.* (66 Hun, 566), which the defendant cites as an authority on the question of contributory negligence, we are unable to discover any thing which strengthens the contention of the defendant. In that case the court tells us that "The plaintiff's own testimony showed that he was familiar with the crossing and its surroundings, and with the running of trains at that point. He knew that an orchard, with thick foliage, and a building in the angle between Jennings street and North avenue, completely obstructed the vision of the driver in the direction from which the train approached, until his horses' heads were actually upon the track of the railroad. He knew that a train was due at that crossing only a very few minutes, if at all, before the arrival of his party there. He had looked at his watch under an electric light about five hundred feet from the crossing, and found the time to be 'nine o'clock, or a little before,' and he knew that the train was due at the North street station at five minutes before nine. Such being the case, counsel for the defendant, at the proper time, requested the court to charge, 'that if the plaintiff and his companions in the carryall approached this railroad with music and singing, and that thereby they were prevented, or he was prevented, from hearing the bell of the train if it was rung, he was guilty of contributory negligence, and cannot recover.'" The court declined to make this charge, but gave some qualified instructions to the effect that only in so far as the plaintiff himself

made the noise was he guilty of contributing to the accident; and commenting upon this the Court of Appeals say: " The proposition, which, we think, was fairly presented by the request, was, that it was negligence in the plaintiff to go upon the track with the din of noise in his ears which prevented him from hearing the sound of the approaching train; and this without regard to whether he was making or helping to make the noise. We think the proposition was a correct one; that it was the duty of the plaintiff — *familiar as he was with the situation and its dangers, knowing that the train, if approaching, could not be seen, and that the only safeguard was the sense of hearing* — to refuse to go upon the crossing in a noise which prevented the exercise of that faculty."

There is a wide difference between a man staying in a carriage with a crowd of carousers, knowing that he is approaching a dangerous railroad crossing, and simply sitting as one of a party upon a tally-ho coach, passing along a country highway, with no adequate notice of his danger; and the matter was one which was very properly left for the jury to determine. Had the plaintiff in this action been aware of the dangerous character of the crossing which the party was approaching; had he been made aware of the fact that they were approaching a railroad crossing, he would not be permitted to rely upon the judgment or care of the driver, but would be called upon to exercise ordinary care in his own behalf. But the case is presented in an entirely different light where the plaintiff is ignorant of his surroundings and has no adequate notice of his danger; and whether he has, in fact, had such notice of danger is a question of fact with which the court is not called upon to deal.

Viewed in whatever light the case may be presented, we are unable to find any just reason to disturb the findings of the jury, or to reverse the order of the court denying a new trial. The defendant was given all of the privileges to which a defendant in a case of this character is entitled, and the jury has found a verdict upon the facts presented for determination.

The judgment and order of the court below are affirmed, with costs.

BARTLETT, J., concurred in result.

GOODRICH, P. J. (concurring):

I fully concur in the views expressed in the opinion of my asso-
ciate, Mr. Justice WOODWARD, but I do not think he has given suf-
ficient emphasis to what I consider to have been the real cause of
the accident. I think the accident resulted almost wholly from the
company's neglect to comply with a positive provision of the Rail-
road Law, a disobedience of which should be visited, in any case,
with the severest condemnation of the court.

Section 33, article 2, of the Railroad Law (2 R. S. [9th ed.] 1270)
provides as follows:

"Every railroad corporation shall cause boards to be placed, well
supported and constantly maintained, across each traveled public
road or street, where the same is crossed by its road at grade. They
shall be elevated so as not to obstruct travel, and to be easily seen
by travelers, and on each side shall be painted, in capital letters
each at least nine inches in length and of suitable width, the words:
'Railroad crossing, look out for the cars,' but such boards need not
be put up in cities and villages, unless required by the officers hav-
ing charge of the streets  *  *  *."

Mr. Justice WOODWARD describes the signboard which was
erected, in forcible language, as a "comparatively insignificant sin-
gle-pole affair, standing by the side of the roadway and partially
obscured by intervening telegraph poles." In other words, the sign
which was erected by the defendant was not a compliance with the
statute. The intention of the statute was to provide an unmistak-
able notice of a grade railroad crossing, of a character most likely to
attract the quick attention of travelers to the dangers inseparable
from the grade crossing. The statute is specific in its description of
the required sign. It must be of boards placed "across" the road,
that is, it must extend from one side of the road to the other, while
the sign actually erected was placed on one side of the road, upon a
single pole, and did not cover any of the traveled part of the road.
It must be elevated so as not to obstruct travel. This latter empha-
sizes, by implication, the requirement that the sign must extend
across the road. It must be of such a character as to be easily seen
by travelers, and the minimum height of the letters is stated to be
nine inches, while the letters in question were only eight inches in
height. Even the words were not those required by the statute,

although this may not be very material. They were: "Danger, railroad crossing," instead of "Railroad crossing, look out for the cars." I have paraphrased minutely the specific designations of the statute because the Railroad Law, in its provisions of this character, is the outcome of many years of experience, in order to give force to the application of well-considered authority upon a cognate subject.

The statutes of the United States (13 U. S. St. at Large, 60, art. 10) formerly prescribed that "sailing ships under way shall use a foghorn. Steamships and sailing ships when not under way shall use a bell." In the case of *The Pennsylvania* (19 Wall. 125) there had been a collision between a steamer and a sailing vessel, both under way. The sailing vessel was ringing a bell instead of sounding a horn. The court said (p. 136): "But when, as in this case, a ship, at the time of a collision, is in actual violation of a statutory rule intended to prevent collisions, it is no more than a reasonable presumption that the fault, if not the sole cause, was at least a contributory cause of the disaster. In such a case the burden rests upon the ship of showing not merely that her fault might not have been one of the causes, or that it probably was not, *but that it could not have been.* Such a rule is necessary to enforce obedience to the mandate of the statute."

In *The Martello* (153 U. S. 64) the United States Supreme Court followed the same doctrine and cited and approved what appears, though not in *ipsissimis verbis*, in *The Fanny M. Carvill* (13 App.. Cases, 455, n.), where the absence of a light prescribed by statute was claimed to be the cause of the collision. The court said: "If you can show that there is a defect in the lights, that vessel must be held to blame unless she can show that the defect which exists in her lights *could not by any possibility have contributed to the collision.*"

I can see no difference in principle between the force to be given to the statute of the United States, respecting collisions, and the statutes of this State, in respect of railroad crossings. The statute is equally imperative, inoperative in both instances, as to certain requirements; and applying the authorities cited to the case at bar the defendant was bound to show that the absence of the proper signboard could not by any possibility have contributed to the acci-

dent.   To my mind, not only has the defendant failed to establish such a fact, but, on the contrary, it seems clear that if there had been a signboard extended across the road, of the character required by the statute, it could scarcely have failed to attract the attention of the driver or occupants of the coach.   At any rate, the defendant has not even attempted to show that the presence of such a sign could not possibly have been overlooked by the occupants of the coach, while it is evident that they did not see the sign erected on the side of the road.   I think that this fact on the evidence in the record is conclusive upon the liability of the defendant.

Judgment and order unanimously affirmed, with costs.