NOTE.—See further as to what constitutes a valid acceptance by the buyer to take the case out of the statute. (*Simmonds* v. *Humble*, 13 C. B. N. S., 258; *Denmead* v. *Glass*, 30 Ga., 637; *Goddard* v. *Demeritt*, 48 Maine, 211; *Cusack* v. *Robinson*, 1 Ellis B. & S., 299; *Nicholson* v. *Bower*, 1 Ellis & E., 172; *Ross* v. *Welch*, 11 Gray, 235; *Currie* v. *Anderson*, 2 Ellis & E., 592

JAMES GANDOLFO, Respondent, *v.* THOMAS APPLETON, Appellant.

In an action of accounting between plaintiff and defendant as partners, the plaintiff claimed a credit for moneys he alleged were paid by him through one S. (dead at the time of the trial), to C. & Co., creditors of the firm. G., one of the firm of C. & Co., called by the defendant, having testified that S. did not pay any part of the firm debt to C. & Co., but only his own and plaintiff's individual debts; and on cross-examination by the plaintiff, having denied any recollection of having heard his father, C, senior member of C. & Co. (who was alive at the time of the trial), admit to the plaintiff, at a subsequent interview between them, that the claims of C. & Co., against the firm, had been settled; the plaintiff offered himself and was admitted, under objection, to testify, that, in the presence of G., C. had made such an admission—*Held*, this was error.

Such proof was incompetent as evidence against the defendant of the fact of payment by plaintiff to C. & Co.

It was inadmissible to impeach the defendant's witness, G., as the plaintiff was bound by his answer on cross-examination as to what he had heard said by a third person, not a party or witness, it being a collateral fact.

As an *admission* by C. & Co., that the debt was paid, it was not competent evidence of the fact of payment against the defendant, on this accounting with the plaintiff, whether C. & Co. would have been estopped from thereafter making any claim against the firm or not.

Where a partnership debt is "settled," the firm creditor receiving one-half in cash and the individual note of one of the partners indorsed by the

other for the other half, the debt, as a firm debt, is discharged, and on a partnership accounting between the partners, the maker of the note should be credited with its amount as so much paid by him for the firm.

(Argued April 5th, 1869, and decided June 16th, 1869.)

APPEAL from a judgment of the General Term of the first judicial district, affirming a judgment on the report of a referee upon a partnership accounting, in favor of the plaintiff against the defendant, for the sum of $11,293.49, entered on the 9th June, 1862.

On the 1st September, 1848, the plaintiff formed a partnership with the defendant in New Orleans, in the general commission business, under the name of James Gandolfo & Co. The business was continued until the summer of 1851, the firm having in the meantime acquired an interest in a sugar refinery. The partnership was dissolved in September, 1851, and the plaintiff took exclusive charge and possession of all the assets, copartnership property, books and papers of the concern. The plaintiff closed up the concern in a year or two and in 1853, came to New York, where he has since resided. The defendant remained in New Orleans, engaged in his own private business and having nothing to do with the old partnership matter, until 1861, when he was driven out by the war; and on his arrival in New York, this action was brought.

In 1851, at the time of the dissolution, a balance sheet was struck between the parties, by which it appeared that $6,273.66 had been drawn out by the defendant more than he had put in, and the plaintiff had advanced $5,679.65 more than he had received. By the same balance sheet, however, it appeared that the assets left in the hands of the plaintiff, were $131,549.20 against only $112,888.10 of liabilities; being a surplus of assets of $18,661.20, and more than enough to balance any inequality between the parties. Subsequent to the dissolution, a debt of something over $10,000 owing by the firm to the Charleston Bank, of South Carolina, was settled by the payment of one-half of the amount in

cash, and the receipt by the bank of the defendant's individual note for the other half ($5,375.59), indorsed by the plaintiff. This note was not credited to the defendant by the referee, though the half cash was credited to the plaintiff. The referee found at the time of the trial, that there were no other debts outstanding against the firm.

It appeared upon the trial that assets from the sugar refinery were received by the plaintiff to the amount of over $25,200. In accounting for these, he claimed to have applied $5,000 thereof through one Seltzer (dead at the time of the trial), to the liquidation of a debt due N. F. Cunningham & Co., of Boston, by the firm. To disprove this, the defendant called George Cunningham, one of the firm of C. & Co., who swore that he knew of the transaction with Seltzer; was present when Seltzer made the settlement; that his, S.'s, own indebtedness only was settled and that he paid nothing on the indebtedness of Gandolfo & Co.; that he gave to Seltzer a receipt which, on being put in evidence, corroborated him. On cross-examination, he swore that the transaction was with N. F. Cunningham, his father, though he was present most of the time; that he knew of no other payment, either by Seltzer or the firm of Gandolfo & Co. On the same day Seltzer paid $2,141.47 to N. F. Cunningham & Co., confessedly on the plaintiff's individual indebtedness to them for gunny bags. On being asked by the plaintiff's counsel, whether he remembered of the plaintiff, on a subsequent occasion, making inquiry of the father, N. F. Cunningham, about the settlement with Seltzer, and whether N. F. C. did not then tell the plaintiff that the account with Gandolfo & Co. was settled, the witness answered he did not recollect it. The plaintiff was then called and permitted to swear what N. F. Cunningham told him when George was present, about the terms of the previous settlement with Seltzer. This was objected to by the defendant, but the objection was overruled by the referee.

*Samuel Hand,* for the appellant, insisted that the demand,

the plaintiff having rested nine years, was stale, and could not be enforced in a court of equity, although the statute of limitations was not strictly applicable, the defendant being a non-resident of the State. That courts of equity will not entertain *stale* demands, though no statute of limitation exists, he cited 2 Stor. Eq. Jur., § 529–1520 ; *Ray* v. *Bogart* (2 John. Cases, 432, Court of Errors) ; *Giles* v. *Barremore* (5 Johns. C. R., 550–557) ; *Rayner* v. *Pearsall* (3 Johns. Ch., 578) ; Sir. THOS. PLUMER in *Cholmondeley* v. *Clinton* (2 Jac. and Walk., 141) ; Fonblanque's Eq., Bk. 1, chapter 4, § 27 ; *Bell* v. *Bremen* (3 Murphy, N. Car., 273) ; *Hercy* v. *Dinwoody* (4 Bro. C. C., 257) ; *Coleman* v. *Lyne* (4 Rand., Va., 354) ; *Bridger* v. *Mitchell* (Bunbury, 224) ; *Heartt* v. *Corning* (3 Paige, 556).

The plaintiff having received all the assets of the firm, agreed by both parties to be more than the liabilities, and having never given an account of them, must first do so before he can call for an account or put the defendant in default. (*Towsley* v. *Dennison*, 45 Barb., 490, and cases cited there ; *Lupton* v. *White*, 15 Vesey ; *McCartan* v. *Van Syckel*, 10 Bosw. 694 ; *Heartt* v. *Corning, supra*, 1 Edw., 417 ; 2 Edw., 1.)

The evidence of the plaintiff, as to what N. F. Cunningham told him about the Seltzer settlement, was improperly admitted. (*Worrell* v. *Parmelee*, 1 Comst., 521 ; *Bristol* v. *Dann*, 12 Wend., 142 ; *Babbin* v. *Healey*, 36 How., 346 ; *Peck* v. *York*, 47 Barb., 131 ; *Purchase* v. *Matteson*, 2 Robt., 91 ; *Alexander* v. *Mahon*, 11 Johns., 185 ; *Jones* v. *Hurlburt*, 39 Barb., 406 ; *Carpenter* v. *Ward*, 30 N. Y., 243 ; *Plato* v. *Reynolds*, 27 N. Y., 586 ; *Hanna* v. *McKillip*, 49 Barb., 342 ; *Moore* v. *Meacham*, 6 Seld., 207 ; *Kimball* v. *Huntington*, 10 Wend., 675 ; *Booth* v. *Swezey*, 4 Seld., 276 ; *Tousley* v. *Barry*, 16 N. Y., 497.)

The referee erred in allowing the plaintiff interest (nearly half of the amount of the judgment) on the balance found against defendant. The plaintiff had taken into his hands assets abundantly sufficient, as was supposed by both, to pay everything, and the defendant had no notice to the contrary

until suit brought. He could not tell what to pay, for he had no notice what was due, or that anything was. (*Kane* v. *Smith*, 12 Johns., 156; *Turner* v. *Burkinshaw*, Law Rep., 2 Chan. App., 486; *Robinson* v. *Insurance Co.*, 10 Abb. N. S., 186; *Esdaile* v. *Stephenson*, 1 Sim. & Stu., 122; *Watney* v. *Wells*, Law Rep., 2 Ch. App., 249.)

The individual note of the defendant to the Charleston Bank should have been credited to him in the accounting. (*Holmes* v. *De Camp*, 1 John. Rep., 34; *Arnold* v. *Camp*, 12 id., 409; *Smith* v. *Rogers*, 17 id., 340; *Bank* v. *Fletcher*, 5 Wend., 85; *Sikes* v. *Works*, 6 Gray, 434; *Attorney-General* v. *Bank*, 1 Dev. & Batt., 533; *Donald* v. *Posey*, 13 Ala., 572; *Gridley* v. *Dole*, 4 Comst., 486.)

*Charles A. Rapallo*, for the respondent, insisted that the plaintiff had furnished a sufficient account to entitle him to call upon the defendant for reimbursement. He cited *Dias* v. *Merle* (1 Hoffm. Ch. Pr., 523); *Turner* v. *Curry* (5 Beavan, 515); *Miller* v. *Craig* (6 Beavan, 463).

The declarations of N. F. Cunningham were properly received. (*Harrison* v. *Parker*, 1 Wils., 257.)

The credit claimed by the defendant for the note given by him, and indorsed by the plaintiff to the Charleston Bank, for one-half the firm debt, was properly rejected. (Collyer on Part., § 199; *Beak* v. *Beak*, 2 Swanst, 627; *Le Page* v. *McCrea*, 1 Wend., 171; *Toulmin* v. *Copland*, 3 You. & Col., 643; *Hutchinson* v. *Smith*, 5 Jr. Eq. R., 117.)

The absence of findings is no ground for reversal. The judgment must appear erroneous upon the facts found. (*Carman* v. *Pultz*, 21 N. Y., 547; *Grant* v. *Morse*, 22 N. Y., 323; *Hovey* v. *Kerr*, 21 How. Pr. R., 409; *Phelps* v. *McDonald*, 26 N. Y., 84.)

Hunt, Ch. J. This court is an unsuitable tribunal for the examination of complicated accounts. Fortunately that duty is not entrusted to it. We look into the accounts so far only as to see whether, upon admitted facts, an error of law has

been committed. We do not criticise witnesses, weigh or balance evidence. This duty is discharged by the referee and the General Term, and where they agree, as in the present case, we accept their conclusions of fact without examination.

I. shall not investigate the long accounts now before us, but confine my examination to two points, in which the appellant alleges that error has been committed to his prejudice.

1. In stating the items to which he claimed to be entitled as credits in his favor, the plaintiff testified to the payment and discharge of debts against the firm of Gandolfo & Co., due to N. F. Cunningham & Co., of Boston. These debts arose upon two several bills of exchange, one of $5,000 and one of $4,000, and reclamations upon the sale of certain sheetings. The payment was alleged to have been made through one Seltzer, who was dead at the time of the trial. The same firm had accounts with Gandolfo individually, and with Seltzer individually. The defendant proved by George Cunningham, one of the members of the firm, that the firm debt was not embraced in that settlement made by Seltzer, and that there was no credit on their books on account of the firm debts of Gandolfo & Co. The same witness further testified, in answer to the defendant's inquiries, that to the best of his knowledge, information or belief, the plaintiff never made any settlement of their claim against himself or his firm, personally or by Seltzer, or by any other agent. On his cross-examination he was asked whether he recollected his father's saying to the plaintiff, in a subsequent interview in 1853, that the account with the firm was settled, and he answered that he did not. The plaintiff was then called as a witness and stated that he saw Mr. N. F. Cunningham at the time indicated in the last question, and that George was present. He was then asked, "Did you then inquire as to the terms of settlement between Cunningham and Seltzer. What was said ?" The question was objected to. The objection was overruled and the defendant excepted. The witness answered that Mr. N. F. Cunningham then said that the account was discharged. The referee allowed the plaintiff the credit for this claim.

On a question between Gandolfo & Appleton, whether a particular debt had been paid by the former, the statements of third persons were not competent evidence. The testimony of George Cunningham was competent. The testimony of his father, N. F. Cunningham, would have been competent; but the declarations of either of them, not made as a witness in the case, were not competent. It was hearsay evidence simply. ( *Worrall* v. *Parmelee*, 1 Coms., 521 ; *Paige* v. *Cagwin*, 7 Hill, 361.)

The plaintiff insists that this evidence was competent to impeach the statement of George Cunningham that the debts of Gandolfo & Co. had never been settled, to his knowledge, information or belief. There was evidence, it is said, that his father had stated in his presence, that their debts had been settled by Seltzer; and the information is brought directly to his knowledge. This argument is specious, but it is not sound. In the first place, the proof of N. F. Cunningham's declaration was not offered as evidence to contradict George Cunningham. The case contains no allusion to any such ground. It was offered in the cause as evidence generally, and apparently received as such, and acted upon by the referee in arriving at a conclusion upon a disputed question of fact. It will not do, now, to assume a ground not taken at the trial. But even if so offered, it was not within the well settled rule of law. In *Carpenter* v. *Card* (30 N. Y. R., 246), the principle is thus laid down by HOGEBOOM, J. : "The credit of a witness may be impeached by proof that he has made either verbal or written statements out of court contrary to what he swears at the trial, provided he has been previously cross-examined as to such alleged statements, and provided that such statements are upon a point material to the question in issue." The rule is confined to what the witness has himself said or done; and I find no case where a party has been impeached upon what has been said or done by another in his presence. (1 Green. Ev., § 462.) This would be refining too much for practical purposes. A witness testifies that he has no knowledge of the payment of

a debt; it is no impeachment of his veracity to prove that ten years previously another person stated in his presence that the debt was paid. (*People* v. *Genny,* 11 Wend., 18.) The question here was, whether the firm debt had been actually paid. What any one had said upon the subject was immaterial. The oral declaration of N. F. Cunningham, or his written statement, was not only not evidence, but was immaterial. His receipt would not be competent evidence of the payment. While, therefore, evidence of payment in fact would have been competent in every aspect, evidence of what Mr. Cunningham had said was entirely collateral. (*Plato* v. *Reynolds,* 27 N. Y. R., 588.) The question in issue was not, what he said, or what the witness heard; and his evidence upon those points being collateral, is conclusive, and cannot be contradicted. In Cowen & Hill's notes (n. 509) the commentator uses this language: "This decision will suggest to the mind of the experienced practitioner the question so often put to a material witness, whether he had not declared that he knew nothing of the cause on trial, and the value which an answer to such inquiry, one way or the other, should have in the eye of judicial inquiry." I conclude that it would not be competent to contradict and impeach a witness who had answered it in the negative, by proving that he had heard the case stated. The witness here testified that he did not recollect that his father had so stated. Evidence of the statement shows simply a want of recollection by the witness, but is no impeachment of his veracity or his integrity.

It is further insisted that this evidence was competent, as amounting to an estoppel upon Cunningham & Co., which would preclude their setting up a claim for their debt against Gandolfo & Co. at any subsequent period. The error in this reasoning is, that it makes evidence, which is competent and conclusive against the party speaking or acting, of equal force against a party not speaking or acting. What Cunningham & Co. said, did, wrote, or assented to, is, in its nature, competent evidence against them, when they make

their claim as their own act and deed. When the question, however, arises between Gandolfo and Appleton, the character of the transaction is changed; it becomes "*inter alios acta,*" and loses its force as evidence.

I think this evidence was erroneously admitted.

The referee also erred in not allowing to the defendant a credit for $5,375.59, the amount of his individual notes given in settlement of the Charleston debt. The facts were these: In November, 1851, the firm of Gandolfo & Co. drew on Cunningham & Co., of Boston, for $10,325, through Peter Conrey, as agent of the Bank of Charleston. The draft was not accepted or paid; and the Bank of Charleston, as holder thereof, commenced legal proceedings against the firm of Gandolfo & Co. The referee finds, that in June, 1852, "the claim of the bank was settled, by the payment of one-half by the plaintiff in cash, and by giving to the bank three promissory notes, drawn by the defendant to the order of, and indorsed by the plaintiff," payable at different future dates, for an equal amount. These notes were protested, the plaintiff charged as indorser, but no legal proceedings had been taken upon them. The referee allowed to the plaintiff the sum paid by him in cash, to procure the settlement of this claim, but did not allow to the defendant the amount advanced or secured by his notes.

The referee finds that there are now no partnership debts existing, and finds that the claim of the Bank of Charleston against the firm "was settled," by the cash and the notes that were given. To settle, is defined as meaning, to adjust, to liquidate, to pay. This is equivalent to saying that the debt was paid in that manner. If the bank consented to receive the cash and the individual notes in payment of their joint debt, it was competent to them to do so; and the agreement was binding, and the joint debt was thereby discharged. (*Arnold* v. *Camp*, 12 John. R., 409; *Smith* v. *Rogers*, 17 id., 340; *N. Y. State Bank* v. *Fletcher*, 5 Wend., 85.) When a debt is said to be settled, it is, in the ordinary understanding of language, an assertion that the debt is paid or discharged.

I am confirmed in this construction of the meaning of the finding; not only by the finding that there are now no partnership debts existing, but by the fact that the referee, while requiring the defendant to give a bond, protecting the plaintiff against his indorsement of the individual notes, pays no attention to the original firm indebtedness. No security is required against that. I infer that he considers that to be finally at an end. The case stands then, in substance, that the firm debt was extinguished by the cash of the plaintiff to one-half of its amount, and by the individual notes of the defendant, indorsed by the plaintiff, to an equal amount. In my judgment, the circumstance that the plaintiff indorsed the defendant's notes, has no effect in retaining the transaction within the range of the partnership business. That was an individual liability assumed by him, in which the name of the firm did not appear, and in which the firm was not in fact a party. It was in his own interest, and not that of the firm, that the indorsement was made. It was as if the plaintiff personally had lent to the defendant personally an equal amount of money, or as if the plaintiff had procured his friend, instead of himself, to become such indorser. The firm transaction was ended; and the individual liability of the defendant primarily, and of the plaintiff as his surety, was substituted in its place. When the defendant pays the note, the matter is disposed of as to all the world. When the plaintiff pays it, he becomes an individual creditor of the defendant to its amount. If no one pays it, the holder loses the amount, and the defendant is a gainer thereby, as is every debtor who escapes the payment of his debts. If A indorses the note of B, who procures the same to be discounted at a bank, receives the money, and afterwards sets up a successful defence of usury or other illegality; or if the claim is lost by lapse of time, the advantage accrues to the maker, and not to the indorser. This is an inevitable result from the relation of the parties to the transaction. It is quite different from the case where a partner undertakes to derive a benefit to himself from a compromise of the firm debt. As the defend-

ant's counsel well says, he is not permitted to do this. All such compromises enure to the benefit of the copartnership. (Collyer, § 199.) Here no compromise of the firm debt was made. One-half was paid in cash, and the other half in notes, which the holder wisely considered as valuable as the copartnership security. The debt was paid in full, and by the individual securities of the several members of the firm.

Upon the grounds which I have discussed, I am of opinion that a new trial must be had.

All the judges concurred in the opinion of the chief judge, and were for reversal on both grounds stated by him, except GROVER, J., who was for reversal upon the first point only. He did not think the defendant should be credited with the Charleston note.

WOODRUFF, J., having been of counsel, took no part.

Judgment reversed and new trial ordered.