(51 App. Div. 292.)

### HENN v. LONG ISLAND R. CO.

(Supreme Court, Appellate Division, Second Department. May 29, 1900.)

1. RAILROADS—SIGN AT CROSSING—VIOLATION OF STATUTE—DEFENDANT'S NEGLIGENCE.

　　Laws 1890. c. 565, § 33, provides that railroad companies shall place signboards across public grade crossings. Plaintiff, a guest on a tallyho coach, seated on the third seat on top, was looking in front of her, but saw no sign. Beyond the crossing, on the side of the highway, was a sign indicating the railroad, but the accident occurred before the sign was reached. Had a sign been erected as required by law. the accident would not have occurred. Plaintiff had never been over the road before, and had no knowledge of the existence of defendant railroad, and was exercising proper care. Held, that the negligence of defendant involved in violation of the statute was sufficient to support a judgment for plaintiff.

2. SAME—IMPUTED NEGLIGENCE OF ENGINEER—REFUSING INSTRUCTIONS—QUESTION FOR JURY.

　　Where plaintiff, while riding on a tallyho coach drawn by six horses. two abreast, was injured at a railroad crossing, in an action for damages it was not error to refuse a charge that there was no evidence imputing negligence to defendant because of anything the engineer did or omitted to do after he saw the first team of horses approaching the track, where the evidence of the engineer that he blew a warning whistle as soon as he saw the first team, and that he was engaged in reversing the engine as the collision occurred, was contradicted, and there was evidence that he never blew the whistle or applied the brake until the engine was going through the coach, as such question was for the jury.

3. SAME—STRANGER ON HIGHWAY—STANDARD OF CARE—REFUSING INSTRUCTIONS.

　　The jury was charged, in substance, that a stranger traveling on an unknown highway had a right to assume that dangerous places would be pointed out, and, in the absence of warning that she was approaching a railroad crossing. she could not be regarded as negligent, as matter of law, if she exercised that degree of prudence which an ordinarily prudent person would exercise under the circumstances, and that it was plaintiff's duty to warn the driver of approaching obvious danger. Held, that it was not error to refuse a charge that it was plaintiff's duty, riding on top of the coach, to observe the road on which she was traveling, and to be vigilant in her efforts to discover the existence of the railroad crossing, and that she could not, as matter of law, omit looking out for herself, and had no right to rely on the driver or helpers.

4. SAME—ELECTRIC SIGNAL BELL—EVIDENCE.

　　Where defendant had voluntarily erected an electric signal at the crossing operated by the trains proceeding in either direction, it was not error to admit evidence that such bell had been out of order and had not rung for two days before the accident.

5. SAME—IMPUTED NEGLIGENCE—INSTRUCTIONS.

　　Where defendant had voluntarily erected an electric signal bell at the crossing, and there was evidence that the bell did not ring, and the jury was charged that the negligence could not be imputed to defendant, even

though the bell did not ring for this train, unless defendant knew it was out of order, or that it was out of order for so long a time that defendant should have known such fact with reasonable care, it was not error to refuse a charge that, as the proof showed that plaintiff did not know of its existence, no negligence could be imputed to defendant because of plaintiff's failure to hear the bell ring.

6. SAME—CROSSING SIGN—NONPREJUDICIAL EVIDENCE.

Defendant was not prejudiced by the admission of testimony of a bicyclist, who was at the scene of the collision, that he did not see a crossing sign, when he testified that he neither looked for the sign nor paid any attention to it, and a question as to how near he came to the railroad before he saw the track was excluded.

7. SAME—UNUSUAL CHARACTER OF TURNOUT—INSTRUCTIONS.

It was not error to refuse a charge that, if the jury found that the collision would not have happened except for the unusual character of the turnout, then the verdict must be for defendant, where a charge was given that there could be no recovery if the accident was caused by the driver or helper, and the character of the vehicle and team.

8. SAME—SIGN AT CROSSING—GENERAL VIOLATION OF STATUTE.

The fact that defendant had substituted a sign in another and totally different situation from that required by statute, and that some 6,000 signs of the same nature as the substituted sign were in use in the state, does not absolve defendant from responsibility for the direct consequences resulting from the accident because such violation of the statute was open and common.

9. SAME—EXCESSIVE VERDICT.

Where, as a result of the accident, plaintiff was made nervous, which her physician testified would disappear within a year, and she had been confined to her room but three weeks, and since such time she had returned to her work, and had been continuously employed, a verdict for $7,500 was excessive, and should be reduced to $3,500.

Appeal from trial term, Kings county.

Action by Matilda S. Henn against the Long Island Railroad Company for damages for injuries received in a collision at a crossing. From a judgment in favor of plaintiff, and from an order denying a motion for a new trial on the minutes, defendant appeals. Modified.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, HIRSCHBERG, and JENKS, JJ.

Benjamin F. Tracy, for appellant.

Albert A. Wray, for respondent.

HIRSCHBERG, J. The accident which has occasioned this litigation was the subject of review by this court in Lewis v. Railroad Co., 30 App. Div. 410, 51 N. Y. Supp. 558. In affirming the judgment and order in that case, we necessarily determined that the facts as then presented justified the jury in concluding that the defendant was chargeable with negligence, and that any victim of the disaster who was personally free from legal blame was entitled to recover the damages sustained. The facts, which do not appear in this case to be materially different from those established in the case cited, are fully set forth in the opinions delivered in this court, and in the opinion delivered in the same case in the court of appeals. Lewis v. Railroad Co., 162 N. Y. 52, 56 N. E. 548. The plaintiff in this case was a young woman, 19 years of age, a guest of the young people by whom the tallyho coach was chartered, and

at the time of the collision was seated on the top of the coach,—the third seat from the front, and the second from the left-hand side. There were three people on each of the seats ahead of her. She had never been over the road before, had no knowledge of the existence of the railroad, and heard no warning of the approach of the train, if any were given. No proof was given tending to indicate that she was in any respect lacking, on the occasion, in the exercise of ordinary care and prudence. On the contrary, the evidence indicates that she did exercise all the care which the law requires. She was looking in front of her just before the accident, and, of course, saw no sign of the existence of the railroad, in the position which the law requires, and could not have seen such a sign, as the one required by section 33 of the railroad law (chapter 565, Laws 1890) was not placed across the highway by the defendant. There was a sign, indicating the railroad, located at the side of the highway, and beyond the crossing, but the accident occurred before that sign was reached. It is aptly referred to by Mr. Justice Woodward, in the Lewis Case, as a "comparatively insignificant, single-pole affair," bearing no relation whatever as a warning to the sign which the law required, and which sign, so required by law, had it been constructed, would undoubtedly have prevented the accident. In view of the dangerous character of grade crossings, at best, and the especially dangerous features of the one in question, the negligence of the defendant involved in the violation of the statute amply suffices to support the judgment, independently of other negligence alleged, and there must therefore be an affirmance unless error exists in the rulings of the court upon the trial. A number of such errors are assigned by the appellant, and they will be considered in the order in which they are presented.

The court refused to charge that "there is no evidence in this case which would warrant the jury in imputing negligence to the defendant because of anything the engineer did or omitted to do after he saw the first team of horses approaching the track." The court left it to the jury to say whether the engineer did or omitted to do anything after he saw the first team of horses which would charge the defendant with negligence, and this was clearly right, as the solution of the question depended upon what the jury should find the engineer did, and when he did it. The coach was drawn by six horses, two abreast, and it was after the engineer saw the second team emerge from the woods that he says he applied the brake and attempted to check the speed of the train. He did not sand the track, although he admitted that "sanding the track might have made the wheels take hold of the rail better, and slow more and stop quicker, if you get it on before you made the application of the brake." He further claimed to have blown a warning whistle as soon as he saw the first team, and to be engaged in the act of reversing the engine as the collision occurred. While in all this he may not have exercised the best judgment, and a different course might have furnished the mere fraction of a second required by the coach to secure safety, yet, as he was acting under the excitement of a sudden emergency, with limited time, and with various

agencies to select from in attempting to stop or lessen the speed of the train, the defendant could not be charged with negligence because of any error in judgment he may have manifested, or by reason of any failure on his part to do the best and wisest thing. But his evidence was not entirely clear or free from contradiction. On the other hand, there was also considerable evidence tending to show that he neither blew the whistle nor applied the brake until just as the engine was going through the coach, and, if the jury believed this evidence, they would have been justified in concluding that he did not exercise reasonable care and alertness, but was negligent in a kind and of a degree with which the defendant would be chargeable. The proposition could not be disposed of as one of law.

The second ground of error assigned is the refusal of the court to charge, further than already done in the main charge, that "it was the duty of the plaintiff, riding on top of this coach, to observe the road on which she was traveling, and to be vigilant in her efforts to discover the existence of a railroad crossing," and also that "the plaintiff could not, as matter of law, omit looking out for herself, and she had no right to rely on the driver or helpers." On the subject of the standard of care and duty which the law prescribes for one situated as the plaintiff was, the court had charged the jury in the precise words of Mr. Justice Woodward's opinion in the Lewis Case. In substance, it was to the effect that, as a stranger traveling on an unknown highway, she had a right to assume that places of a dangerous character would in some way be pointed out to her, and that in the absence of warning of danger, and in the absence of knowledge or notice of any kind that she was approaching a railroad crossing, she could not be regarded as negligent, as a matter of law, if she "exercises that degree of prudence and care which an ordinarily prudent person would exercise under the circumstances." If the charge as given, and the refusal to charge as requested, are to be considered as tantamount to saying that she was under no duty of care and observation to discover danger, but could lawfully wait until she received notice of such, the instruction might be error; but it would have no practical application in the case, as it is quite apparent that the plaintiff did in fact exercise all the care which the average young lady would ordinarily exhibit while the guest of a coaching party enjoying a holiday excursion. Still less is there any suggestion that carelessness on her part contributed in any way to the accident. Had she heard the engine whistling at the post a quarter of a mile distant in the woods, it would not have necessarily indicated to a stranger that it was on a railroad which crossed the highway she was traversing. She did look out ahead, but failed to see the railroad or the substituted sign, and it is difficult to imagine how any degree of vigilance on her part could have prevented the catastrophe. Neither is it correct to say that she had no right to rely at all upon the driver and his assistants. If that were so, it would have been negligent on her part to accompany the party. Even a person of unusual caution would probably assume, in the position of an invited guest, and in the absence of anything indicative

of the contrary, that those in charge of the vehicle were competent and skillful, as, indeed, there is nothing in the case tending to prove that they were not. The authorities in this state do not support the appellant's contention, and we are informed by the brief that the request is founded on the case of Allen v. Railroad Co., 105 Mass. 77. The ruling there was applicable to the very different state of facts and conditions then under consideration. The charge to the effect that the plaintiff was required to exercise that degree of prudence and care which an ordinarily prudent person would exercise under the circumstances was a correct statement of the rule, and what followed must be taken in connection with, and not as limiting, it. The court further charged, at defendant's request, that it was the plaintiff's duty to warn the driver of approaching obvious danger; and as there is no pretense that she discovered any danger which she concealed from him, or that she exercised or could exercise any control over him, or was in any way personally responsible for what occurred, the defendant has not been prejudiced by the rulings in question.

There was an electric signal bell located at the crossing, and operated by trains upon the track proceeding in either direction. The plaintiff's evidence tended to show that this bell was out of order at the time, and did not ring, and the defendant insists that it was error to admit proof that it did not ring two days before the accident. The proof was immaterial in itself, but it was proper on the question of the time during which the defendant had permitted it to remain out of order. While there was no legal obligation requiring its maintenance, it may be assumed that it was furnished by the defendant as an additional safeguard, to supplement the inadequate sign which the defendant had furnished in place of the one required by law; and it was proper to show that it did not work, on both the question of defendant's negligence and the plaintiff's freedom from blame. Negligence would not have been imputable to the defendant from any defect in the signal bell then first developed, and the proof criticised was receivable to indicate constructive knowledge of the difficulty arising from the fact of its existence during some days preceding the disaster. In this connection it may be noted that the defendant also requested the court to charge that "no negligence can be imputed to the defendant because of the failure of plaintiff to hear the electric crossing bell ring, as the proof shows that the plaintiff did not know of the existence of the bell." This request was refused, and an exception was taken by the defendant. In a general sense, it may be said that negligence can never be imputed to a defendant because of a failure on the part of the plaintiff to do or to omit to do anything. And in this sense the refusal to charge as requested might appear to be erroneous. But as there was evidence tending to show that the bell did not in fact ring at all on the occasion in question, and the plaintiff's failure to hear it ring may have been occasioned by that fact, it is evident that negligence may be imputable to the defendant from that circumstance. The court had already charged, at the defendant's request, that "the jury could not impute negligence to the defendant, even though there was proof

that the crossing bell did not ring for this train, unless it were shown that defendant knew it was out of order, or that it had been out of order for such a length of time that defendant, in the exercise of reasonable care, should have known it was out of order." This request, and the charge given in response to it, stated the correct rule; and the mere fact that the plaintiff did not know of the existence of the bell would not operate to relieve the defendant from the imputation of negligence resulting from a defect in the bell which had existed long enough to charge the defendant with notice, under the terms of the instruction as given to the jury.

A bicyclist named Campbell chanced to be at the scene of the collision,—one of a numerous party there on wheels. He heard the warning whistle, and almost immediately saw the "engine then almost on top of the coach." The appellant insists that it was error to permit this witness to testify that he did not see the crossing sign. He answered twice that he did not see it. The first answer was struck out on defendant's motion. The second remained, no motion being made to strike it out. But the court itself immediately elicited the fact that he neither looked for the sign nor paid any attention to it, and under those circumstances his failure to see it could not have injured the defendant's case in the slightest degree. If there were any doubt on the subject, it was removed by the rulings of the court on the next succeeding questions, as to how near he came to the railroad before he saw the track, and which were ruled out, the court saying:

"I do not think this is good evidence. The conditions may not have been at all alike. * * * The trouble is with the relative locations,—one on the ground, and one on top of the stagecoach."

This is as applicable to the sign as to the track, and must have been so understood by both counsel and the jury.

The court refused to charge that:

"If, upon all the evidence, the jury find that this collision would not have happened except for the unusual character of the turnout, then the verdict must be for the defendant."

The court did charge that there could be no recovery if the accident was caused by the driver or helper, and the character of the vehicle and teams; and this was as favorable an instruction as the defendant was entitled to. No case is cited, holding that a tallyho coach is so unusual as to furnish immunity to a railroad company by whom it may be negligently destroyed; nor was there any view of the evidence which the jury could take which would justify the conclusion that the collision would not have happened except for the unusual character of the turnout. It was an ordinary tallyho coach, drawn by six horses, and the defendant's engineer did not suggest that the character of the turnout contributed in any way to the accident. The jury was frequently charged that there could be no recovery unless the collision was occasioned by the defendant's negligence, and the rules governing such negligence were correctly stated. Of course, there could have been no collision but for the presence of the coach upon the track, with whatever unusual features may be incident to such a conveyance; but the charge requested could but

have served to invite the jury to speculate upon conditions and possibilities to which no evidence was directed on either side, and to distract their attention from the real issues in controversy.

The verdict was not against the weight of evidence. On the contrary, the preponderance of evidence seems clearly with the plaintiff. She has fully established the absence of contributory negligence. While the coaching party may have been naturally exuberant and boisterous in the enjoyment of the holiday outing at the outset, the proof is overwhelming that at the time of the accident, and for some period prior thereto, they had been quieted down, and, having about reached their destination, were considering and looking for a desirable location, with a view of dismounting and of eating the luncheon provided by the ladies. There was no noise sufficient to prevent the hearing of an approaching train, and no hilarity calculated to distract attention. The driver and his helpers were attending carefully to their business, the coach proceeding at a jog trot. With the possible exception of two persons,—probably of one only,—none of the occupants of the coach had been in the locality before. The highway is wooded so as to obstruct the view, and the railroad planked so that its existence is scarcely discoverable until the traveler is upon it. The sign of a railroad crossing, designed by law, and so designed and located as to challenge attention and force itself upon the sight, was wholly absent, and in its place was substituted a trifling affair, in another and totally different situation from that required by statute, and which proved wholly worthless and ineffective. Referring to this sign, the presiding justice of this court wrote in the Lewis Case that "the accident resulted almost wholly from the company's neglect to comply with a positive provision of the railroad law, a disobedience of which should be visited in any case with the severest condemnation of the court." In the court of appeals in that case Judge Martin considered the question of the defendant's negligence in respect of the crossing sign, although the necessity for its determination was not then presented, but in order to guide future trials of the cases arising from this accident, and clearly intimated that, in the case of one unfamiliar with the crossing, the conduct of the company exhibited actionable negligence. The proof shows that there are 6,000 crossing signs in this state of the general character of the one furnished by the defendant, but, of course, it does not show how many deaths are chargeable to the willful and general violation of the law which is involved. But, in any event, it would be monstrous to hold as matter of law that the defendant should be absolved from responsibility for the direct consequences of an infraction of the law, merely because such deviations from the requirements of the statute are open, defiant, and common. The learned trial justice could not have granted the defendant's motion for a new trial upon the minutes without doing violence to the facts, and without ignoring the law as announced by this court, and approved and confirmed by the court of appeals.

We have thus considered in detail every point suggested in the brief or mentioned on the argument, and find none which, in our judgment, warrants a reversal. We are of opinion, however, that the

verdict is excessive in amount. The only effect of the accident has been to render the plaintiff nervous, and her physician testified that he "should certainly expect it to disappear within a year, at any rate." The plaintiff was confined to her house three weeks, but after that returned to her work, in which she has since been continuously occupied; leaving her home in Brooklyn at a quarter to 8 in the morning, and the store in Manhattan where she is employed at half past 5 in the afternoon. She has lost no earnings. There are other considerations bearing on the question, on both sides, not necessary to mention. They have all been considered, including the advantage which the jury possessed in witnessing her personal appearance, as indicative of health or otherwise. We think the amount of the recovery should be reduced to $3,500.

Judgment and order reversed, and new trial granted, costs to abide the event, unless the respondent within 20 days stipulate to reduce the recovery to $3,500, and extra allowance proportionately. In the event of such stipulation being given, the judgment as reduced is unanimously affirmed, with costs. All concur.