(49 App. Div. 29.)

## DE GRAW v. ERIE R. CO.

(Supreme Court, Appellate Division, Second Department. March 20, 1900.)

RAILROADS—EVIDENCE—QUESTIONS FOR JURY.

Where, in an action for injuries sustained by being struck by a train at a crossing, plaintiff testified that he looked and listened, and did not hear any signal or see the headlight, and that he then went on the track, it is error to refuse to submit the case to the jury, though other witnesses testified positively that the headlight was lighted and that the warning signals were sounded, since it is for the jury to say whether defendant was negligent or whether plaintiff was guilty of contributory negligence.

Appeal from trial term, Orange county.

Action by Wilson De Graw, by his guardian, against the Erie Railroad Company, to recover for personal injuries. From a judgment in favor of defendant, and from an order denying a motion for a new trial, plaintiff appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, HATCH, WOODWARD, and HIRSCHBERG, JJ.

Thomas Watts, for appellant.
Henry Bacon, for respondent.

GOODRICH, P. J. About 7 o'clock in the evening of November 12, 1898, the plaintiff, a boy 11 years of age, while attempting to cross the tracks of the defendant's road at Guymard, Orange county, was struck by a west-bound train, and received serious injuries. The court, at the close of the evidence of both parties, dismissed the complaint, and the plaintiff appeals from the judgment entered thereon.

There was evidence tending to show the following facts:

The plaintiff lived at Guymard, on the south side of the railroad, which has two tracks. On the evening in question he and his sister were sent by their father to the post office, which is in the railroad station, on the north side of the tracks. After getting the mail, they went out on the station platform, which runs close to the track, and at the end is level with the highway, to which it extends. A long freight train was going eastward, with an engine at each end. At this point there is a heavy grade, and the engines were puffing loudly. This train was passing as the children came out on the platform. They stopped until the rear end had cleared the crossing. The plaintiff testified:

"We stopped in the middle of the platform until that caboose cleared the crossing, and then we looked up and down,—heard none and seen none,—and then we kept walking till we got on the edge of the platform, and then we looked and didn't see none, and then we started to come home; and just as soon as we got on the platform [probably, the planks forming the railroad crossing] I was struck. Q. Were you looking the last thing before you got struck? A. Yes, sir. Q. Towards the east? State whether or not you heard any bell rung or any whistle sounded from any train. A. No, sir. Q. And you were looking to see? A. Yes, sir. Q. Listening, were you? A. Yes, sir. I didn't see any lights on the head of the engine. * * * I didn't see the engine before it struck me."

The sister, 14 years of age, testified:

"After we got the mail we came out, and there was an east-bound train going up, and we stood in the middle of the platform, waiting for that to go by, and I saw my brother looking. He looked towards Otisville [east of Guymard]. He looked both ways. Both did. I saw my brother look up and down the track, as I stated. He looked last when we got on the edge of the platform. The platform runs right up to the rail. We got off right by the highway. There is a highway across the railroad track. The station is west. The highway is west of the station. Runs right close to it. That is where my brother and I got off, or he got off. I noticed his hat fly. * * * I didn't hear any whistle or any bell rung. I couldn't see any light on the front of the engine. * * * I first saw the train going towards Port Jervis, that struck my brother, when I seen his hat fly. Then it was right by me, passing. When I next saw my brother, he was down in middle ways of the milk-can platform; that is, across the highway. He had been carried across the highway."

The father testified that he was at his store, 200 feet south of the tracks, and saw both the east and west bound trains, that the west-bound train was running at a rapid rate. He said:

"I didn't hear it give no signal of no kind whatever. I didn't hear any bell rung or whistle sounded. I was listening."

On the other hand, the defendant produces evidence tending to show that the headlight and other lights of the locomotive were lighted at Summit, a station east of Guymard, and were burning when the train reached Port Jervis, the station next west of Guymard; that the whistle was sounded and the bell rung for some distance before the train arrived at Guymard; and that there was a clear line of vision for more than a quarter of a mile from the crossing. Here was a conflict of evidence, and a jury could give credit either to the witnesses for the plaintiff or to those for the defendant, and render a verdict accordingly.

The cases cited by the learned counsel for the defendant in support of his contention that the negative testimony of witnesses that they did not see the approaching train, or hear its whistle or bell, would not carry the case to the jury, as against the positive testimony of witnesses who heard the signals, rest upon and cite the case of Culhane v. Railroad Co., 60 N. Y. 133; but the language of the court in that case was as follows (page 137):

"As against positive, affirmative evidence by credible witnesses to the ringing of a bell or the sounding of a whistle, there must be something more than the testimony of one or more that they did not hear it, to authorize the submission of the question to the jury. It must appear that they were looking, watching, and listening for it,—that their attention was directed to the fact, —so that the evidence will tend to some extent to prove the negative."

The present case is taken out of the rule by the fact that the plaintiff and his sister testified that they both looked and listened.

Taking the testimony in the light most favorable to the plaintiff, as we are bound to do, we have a case where there was evidence sufficient to justify a finding by the jury that the defendant's train was running after dark, and at a rapid rate across a highway, and without a headlight, sounding neither whistle nor bell; that the plaintiff, intending to cross the track, looked in the direction of the approaching train, listened, and heard no bell or whistle, after which he walked a few feet only, and was struck by the

train while he was on the highway or on or near the crossing. This evidence was amply sufficient to require the submission of the case to the jury, and the nonsuit was error, for which the judgment should be reversed. In this view we are abundantly sustained. The trend of authority is towards the submission to the jury of all questions of negligence on the part of the defendant, or contributory negligence on the part of the plaintiff. In Greany v. Railroad Co., 101 N. Y. 419, 5 N. E. 425, the court, speaking through Judge Danforth, said (page 423, 101 N. Y., and page 426, 5 N. E.):

"It would be error for a trial court to grant a nonsuit if, by any allowable deduction from the facts proved, a cause of action might be sustained by the plaintiff; and, when such ruling has been upheld by reason of the contributory negligence of the person injured, it appeared that such negligence was conclusively established by evidence, which left nothing either of inference or of fact in doubt, or to be settled by a jury. Massoth v. Canal Co., 64 N. Y. 524, 529."

So, also, Judge Earl, in Kellogg v. Railroad Co., 79 N. Y. 72, 76, referring to the situation of the plaintiff and the surrounding circumstances of an accident, said:

"Whether, under such circumstances, by the exercise of ordinary prudence he did or could have heard, was a question, upon all the facts proved, for the jury. It is unquestionably true that the deceased was bound to exercise his sight to avoid danger at the crossing. He was not bound to the greatest diligence which he could have exercised in that way; but he was bound to exercise such care as a prudent man approaching such a place would ordinarily exercise for the protection of his life. Did he exercise such care? * * * It was for the jury to determine whether he exercised that care which the law required of him."

In the Massoth Case, supra, the court said (page 529):

"It is only where it clearly appears from all the circumstances, or is proved by uncontroverted evidence, that the party injured has by his own acts or neglect contributed to the injury, that the court can take the case from the jury and nonsuit the plaintiff. [Citing cases.] The instances in which nonsuits have been maintained by reason of the contributory negligence of the plaintiff, or the party sustaining injury, have been exceptional cases, in which the court has adjudged that such negligence was conclusively established by evidence which left nothing, either of inference or of fact, in doubt, or to be settled by a jury. [Citing cases.]"

In this view of the appeal, it is unnecessary for us to consider whether the plaintiff was or was not sui juris, or what was the effect of the admission by his counsel which appears in the record. The judgment should be reversed, and a new trial granted.

Judgment and order reversed, and new trial granted; costs to abide the event. All concur.