## STEWART v. LONG ISLAND R. CO.

(Supreme Court, Appellate Division, Second Department. October 26, 1900.)

1. RAILROADS—ACCIDENT AT CROSSING—NEGLIGENCE OF ENGINEER—INSTRUCTION.

Where plaintiff, while riding, was injured by colliding with a train, and there was evidence that the engineer did not reverse the engine or apply the brakes until the collision, an instruction that no negligence can be imputed to the defendant, on the evidence, because of any action of the engineer after he saw the team approaching the track, was properly refused.

2. SAME—DEGREE OF CARE—INSTRUCTION.

An instruction that the law holds an engineer to that degree of care which a person of ordinary prudence would exercise under like conditions, and, the more dangerous the indications, the more prudence he must exercise, and, when the indications are very slight, the degree of care may not be so high, but, when the indications become a manifestation of approaching danger of collision, his prudence must rise up to that manifestation, was proper.

3. SAME—RINGING OF BELL—INSTRUCTION.

An instruction, in an action for personal injuries occasioned by a collision at a railway crossing, "that the jury might consider whether the trainmen gave a warning, and what it was, or whether they omitted all warning until too late, in determining the question of the negligence of the railway company," was not objectionable as submitting to the jury the question whether the bell was rung, since the bell may have been rung in some manner, and yet not have constituted a warning, under all the surroundings.

4. SAME—EVIDENCE—CONCLUSIVENESS.

The engineer testified that before reaching the crossing the fireman commenced ringing the bell; and a student fireman, that the fireman rang it in a mild sort of a way, and continued ringing it; and the fireman himself, that he commenced ringing it at the whistling post, and continued until he saw the team, when he got down behind the boiler to keep from getting hit. Fifteen witnesses who were listening did not hear the bell. *Held*, that an instruction that the evidence conclusively established that the bell was rung from the whistling post to the crossing was properly refused.

5. APPEAL—STRIKING OUT EVIDENCE—REVIEW.

Where the record did not show that any ruling was made in refusing to strike out certain testimony, or that any motion was made to instruct the jury to disregard it, and contained no copy of such testimony, error based on such refusal will not be considered on appeal.

6. EXPERT TESTIMONY—EVIDENCE—HYPOTHETICAL QUESTION.

Where evidence had been given as to the grade, make-up of the train, that the steam had been shut off, the speed, and equipment with air brakes, the question to an engineer as to the distance within which the train could be stopped was not objectionable on the ground that no proper foundation had been laid.

7. APPEAL—OFFER OF EVIDENCE—ADMISSION FOR PARTICULAR PURPOSE.

Where evidence was offered generally on the trial, and was excluded, the contention that it was admissible for a particular purpose cannot be raised for the first time on appeal.

**8. IMPEACHING EVIDENCE—STATEMENT OF OTHER PARTIES.**

    Where evidence offered to impeach the testimony of a witness consisted of statements made to him by another person, and the attention of the witness was not directed to the words or their substance, such evidence was properly excluded.

**9. CONVERSATIONS—ABSENCE OF PLAINTIFF—ADMISSIBILITY.**

    Where plaintiff was injured at a railway crossing while riding in a tallyho with a party of 20 or more, and the party had driven up to a hotel, a few miles before reaching the crossing, and made inquiries of the hotel keeper, evidence that he informed some of the party of the location of the railway track was properly excluded, as too vague and indefinite to show that plaintiff had notice of the location of the crossing.

**10. DAMAGES—AMOUNT.** .

    Where the injuries to plaintiff, a young woman, consisted of a broken arm, which was so lacerated that it could not be set straight, and was made incapable of perfect movement, and of a fracture of the skull, from which a part of the bone was removed, which often became inflamed, causing nervousness, headaches, loss of memory, and weak eyes, which injuries were permanent, a verdict of $18,000 was not excessive.

    Appeal from trial term.

    Action by Clara L. Stewart, an infant, by her guardian ad litem, against the Long Island Railroad Company. From a judgment in favor of plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

    Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, HIRSCHBERG, and JENKS, JJ.

    Benjamin F. Tracy (William J. Kelly, on the brief), for appellant.
    Abram H. Dailey (Willard P. Reid, on the brief), for respondent.

    JENKS, J. This action arises from the accident that was thoroughly discussed in Lewis' Case, 162 N. Y. 52, 56 N. E. 548, and in Henn's Case, 51 App. Div. 292, 65 N. Y. Supp. 21. There is no need of further discussion of the facts, which are substantially common to the three cases. We held that the verdict in Henn's Case was not against the weight of evidence, and so made a precedent that settles that question presented on this appeal. I proceed to examine the exceptions: .

    1. The learned trial justice did not err in his refusal to charge:

    "No negligence can be imputed to the defendant, on the evidence in this case, because of any action of the engineer after he saw the team approaching the track." .

    This, substantially, is the same as the first point made in Henn's Case, which was duly considered in the opinion of the court, read by my Brother Hirschberg. 51 App. Div. 292, 294, 65 N. Y. Supp. 21.

    2. There is no error in this part of the charge:

    "The law does not exact of the engineer an impossibility. It holds him to this degree of care, which I have already defined to you: That he must exercise that degree of care which a person of ordinary prudence in his calling would exercise under like conditions. The more dangerous the indications, the more prudence he must exercise. When the indications are very slight, why, then, the degree of care may not be so high; but, when the indications become a manifestation of approaching danger of collision, his prudence must rise up to that. That is the rule to apply to this engineer, taking into account time, and the speed at which he was going. Did he omit anything which, in the exercise of ordinary prudence, he should do? If he

did, what was it? If he failed in that respect, then you could point your finger to that, and say that was negligence."

The learned trial justice correctly defined the degree of care required of the engineer, and did not err in stating that, the more dangerous the indications, the more prudence must be exercised. Mangam v. Railroad Co., 38 N. Y. 455, per Grover, J.; Ernst v. Railroad Co., 35 N. Y. 9, per Porter, J.; Vaughan v. Railway Co., 5 Hurl. & N. 679, per Willis, J.; Brown v. Kendall, 6 Cush. 292, per Shaw, C. J.; Loudoun v. Railroad Co., 162 N. Y. 360, 56 N. E. 988, per Cullen, J.; Shear. & R. Neg. § 87; Thomp. Neg. § 1150. Indeed, the learned counsel for the appellant, in their reply brief, say, "We are ready to concede the familiar rule, 'The greater the danger to be apprehended, the more prudence and care is required to avoid it,' " and then contend that the language of the charge would relate to a danger to be apprehended, but not to this case, which presented, as they term it, an "emergency." The learned court, in this language, did not say, in terms or in equivalents, that if the engineer, in an emergency, failed to rise to the peril, then there was negligence, or that the care should be commensurate with the danger. He did not say, as was charged in Lewis' Case, that, if the engineer omitted to do any act which might have prevented the collision or might have lessened the danger, that was negligence. He did not charge that failure to exercise the best judgment in an emergency is negligence, or that negligence is predicated of error of judgment. He avoided the vice of these and of kindred directions by stating first that the engineer was held to ordinary care and prudence, and then that the measure of prudence and of care was to be tested by the indications; thereby plainly referring to such facts and circumstances, if any, that the jury might find brought home, or should have brought home, to the engineer the danger or possibility of collision; for the learned justice is careful to say, "That is the rule to apply to the engineer."

3. It is next argued that the learned court erred in submitting to the jury the question whether the engine bell was rung. The appellant quotes from the record that the court charged:

"Did they give a warning? What was it? Or did they omit all warning until too late? You are to consider these things in determining whether the railroad company, by its servants, was negligent or not."

I do not find that the alleged error is presented by exception. If it were, this language does not necessarily submit to the jury the question indicated by the appellant. The learned court asked the jury to determine, not whether the defendant rang a bell, but whether it gave "a warning." The bell may have been rung at some time or in some manner, and yet the question remain whether, under all of the surroundings, each ringing was a warning. Indeed, the learned court had just said:

"The contention on the part of the defendant is that they blew the whistle down at the whistle post, some 1,300 feet or a quarter of a mile below, and that then they rang the bell. I believe one witness called by the plaintiff—the student fireman—states that the bell was rung from that distance. You are to take all the testimony in the case, of both sides, and say whether a suitable and sufficient warning was given on the approach of this train to this crossing."

Under this point the appellant also contends that there was error in the refusal of the court to charge that the evidence "conclusively" establishes that the bell was rung "continuously" from the whistle post to the crossing. The appellant relies here upon the testimony of the three men in the engine cab,—Fosdick, Colgan, and Peake. Though Fosdick testified that he commenced to ring the bell when the whistle was blown, and that he kept on ringing and looking out, he also testified that when he saw the third team of the coach "come out" he "got down behind the boiler head, so I would get hit with nothing." Colgan's testimony is confined to the statement that Fosdick commenced ringing the bell. Peake testified both that the bell was "rung slowly in a mild sort of way," and that it continued ringing all of the time. Certainly the affirmative testimony was not cogent to establish "conclusively" that the bell rang "continuously." Be that as it may, the court was justified in its ruling, in that there was competent counter testimony. The doctrine of Culhane v. Railroad Co., 60 N. Y. 133, is limited, in that there the court say that as against positive, affirmative evidence by credible witnesses, there must be something more than the testimony of one or more that they did not hear, to authorize submission to the jury. It must appear that they were looking, watching, and listening, first,—that their attention was directed to the fact,—so that the evidence will tend to some extent to prove the negligence. See Dyer v. Railroad Co., 71 N. Y. 228; Greany v. Railroad Co., 101 N. Y. 419, 5 N. E. 425; Degraw v. Railroad Co., 49 App. Div. 29, 63 N. Y. Supp. 296. The difference in the value of testimony that one did not hear, and that one attentive to hear did not hear, is obvious. Wyatt, Wellbrock, Robert, Wider, Curran, Otto, Schroeder, Bulmer, and many others, whom I need not name, fall within the category of witnesses whose testimony, though negative in its character, nevertheless, within the exception of Culhane's Case, is entitled to be considered against the positive testimony that the bell was rung.

4. The fourth point assigns error in the refusal to strike out certain testimony of Woodruff as not responsive. The record does not show that any ruling was made, does not contain the question, and does not show that a motion was made that the court instruct the jury to disregard the testimony. It, therefore, does not present the question. Holmes v. Moffat, 120 N. Y. 159, 163, 24 N. E. 275.

5. The objection to the question to the expert, Mosher, was not well taken. Proof had been given tending to establish the facts as the basis of the hypothetical question, namely, the grade, the make-up of the train, that the steam had been shut off, the speed of travel, and the equipment with the air brake; and the defendant's engineer had given testimony relating to the subject-matter of the question.

6. Plaintiff's witness Wellbrock, under cross-examination, testified that the party had stopped at Springfield—

"To make inquiry about this place to stop. We asked if there was a place to eat, and they said, 'About three miles up the road.' * * * They didn't identify it by anything. * * * That man did not tell us it was near a railroad track. He didn't tell us it was just this side of the railroad track,—the woods,—because, if he did, I would have known there was a railroad track there."

The witness Eckert, called by the defendant, kept a wayside inn in Springfield, where the coach was stopped before the accident. He testified:

"I saw the driver there, and they inquired of me as to where they could stop to eat; where they could stop to get some lunch; where they could find a good woods, to sit down and have something to eat,—and I told them. * * * Q. I ask you what you said to them. (Objected to as incompetent.) A. I could not say how many were present when I said this, or whether the driver heard it. (Question excluded. Exception by defendant.)"

The contention is that the question was proper in contradiction of Wellbrock. The record does not show that the statement of Eckert was offered as evidence for such purpose. It was offered as evidence generally. There is authority that the appellant cannot now assume a ground not taken on the trial. Gandolfo v. Appleton, 40 N. Y. 539. But, even if that objection be not fatal, it does not appear from the testimony of either of the two that Wellbrock ever had any conversation with Eckert. Now, if the testimony were in contradiction, Wellbrock's attention should first have been specifically directed to the words, or to their substance, and to the alleged sayer of them. It is not enough that we can, or even must, infer from the record, as ingeniously argued by the learned counsel for the appellant, that Wellbrock must have held conversation with Eckert. Wellbrock was entitled to have Eckert presented to him in the first instance as the sayer. Further, it was not sought to contradict Wellbrock out of his own mouth, but by testimony of Eckert's statements to Wellbrock. In Gandolfo v. Appleton, supra, the court, per Hunt, C. J., citing Carpenter v. Ward, 30 N. Y. 246, say:

"The rule is confined to what the witness has himself said or done, and I find no case where a party has been impeached upon what has been said or done by another in his presence. 1 Greenl. Ev. § 462."

Nor was the testimony generally admissible. The record does not present the clean question of proof that Eckert, previous to the accident, had told the plaintiff of the railroad track and of its relative location. Before the testimony could be competent, it was first necessary to show that such statement was made in such presence of the plaintiff as might permit the jury to conclude that it was within her hearing and understanding. Lanergan v. People, 39 N. Y. 41. The testimony falls far short. It does not appear that plaintiff ever saw or heard Eckert. The plaintiff testified that she and Mr. Barnes were inside the coach at the start, and that she did not know—

"Whether it was at Springfield, but after it stopped raining they changed places. When I got up on the coach first, I went back in the seat that I was in at the time of the accident. I was there with Mr. Barnes all the time up to the time the accident happened."

Plaintiff also testified:

"I sat in the coach immediately prior to the accident, in the last seat that was over the boot,—the little seat over the boot of the coach. * * * I could not see the road or horses, or anything in front of me. The seats and the people in front of me obscured my vision."

Eckert further testified:

"It was the same party that bought the stuff and paid for it that asked me. When we spoke, some of the party were on the coach, and some were

standing up, and others went into the yard. The driver was on the tallyho. I could not say if the driver heard this conversation. When I said this, I was out with some soft stuff, and gave it to the people that were in the tallyho that would not get out. When this conversation occurred, I was out on the street near the coach. Some of the party were on the street, and some in the coach, and some on the coach. How many of the young men of the party were there, I don't know. They bought either two or three cases of soft stuff. Whether they were back to the coach when this conversation occurred, or were in my place, I don't recollect exactly. When I answered their inquiry, I was about five or six feet away from the coach. I don't know whether it was by the coach when they asked me, or whether it was in the store, exactly, but the question was asked by these people."

Thus, it does not appear that Eckert ever saw the plaintiff, or had any conversation with any one in her presence. It appears from his testimony that the party separated for the time being while at Springfield. He cannot say where those with whom he spoke were when the "conversation" occurred,—whether in his "place," or "back to the coach." He cannot say whether information was asked of him in his "store," or "by the coach." It is true that he does say that he made answer when five or six feet away from the coach, but he cannot say how many were present. The case does not even present the situation of a coaching party pulling up awhile on the road to make inquiry of a bystander, but of the stop and temporary separation of such a party, during which the wayside inn keeper gives information to some of the party, but to whom or just where does not appear. The testimony is altogether too vague, too uncertain, and too indefinite to make it admissible as against the plaintiff,—to show notice to her, or previous knowledge on her part.

7. Previous to the accident the plaintiff was well and strong. Without detailing the testimony of her immediate pain and suffering, I note that Dr. Delatour testified that she had a scalp wound and fracture of the skull, and a fracture of the left arm; that a portion of the skull was removed, and an aperture was made in the skull, about an inch and a half by three-quarters of an inch; that such space is absent now; that there is no bone there at present; that the covering of the brain and the skin come together at that point, and there is no bone between to protect the brain. He also testified that the natural inflammation that takes place, following such an injury, tends to make those parts glue together into one solid mass. He said that normally the coverings of the brain are separated by a small or slight amount of fluid, and tend to move, or can move, one on the other, and that normally the scalp can move to a certain extent over the bone, with the muscles, but this gluing together in plaintiff's case prevents any motion, and any attempts to move the skull will drag on the coverings of the brain. His testimony is that the arm was broken just above the middle, so high that the large muscles that come down to the forearm and are attached to it tend to displace the fragments, and for that reason the result is not a perfectly straight arm, but there is a bend in the bone, which now prevents the complete movement of the arm. He testifies: "That condition is absolutely permanent. About the head, about the skull and the wound there, those conditions will remain as they are,"—and that the adhesion between the surface of the brain and the outer tissues produces

some irritation of the brain surface, causing a pain more or less frequent. Other testimony was offered to show plaintiff's extreme nervousness and lack of memory. The plaintiff testified that she could not use her left arm to lift anything, or raise it to her shoulder, and that it was "almost a constant pain," and that her head and eyes had been affected. Her family physician testified that she had pain, persistent headache, general nervousness, decreased mental powers, and ovaritis. The defendant called no witness upon the question of the injuries, and the learned counsel, in their brief, while insisting that the verdict is greatly excessive, say, "That she was terribly injured, we concede." Further, I give much weight to the fact that the learned and acute trial justice refused to disturb the verdict. I think that the verdict should stand. The judgment and order must be affirmed.

Judgment and order unanimously affirmed, with costs. All concur.