tiff, as the owner of lot No. 10, was entitled to the strip of land he seeks to recover in this action. If the evidence of this witness was to be relied upon, the deed under which the plaintiff claimed conveyed to his grantor the premises in question. The evidence above mentioned and other testimony in the case, we think, raised a question of fact, which should have been submitted to the jury.

The judgment should be reversed, and a new trial granted, costs to abide the event. All concur.

---

(5 App. Div. 601.)

### DOYLE v. ALBANY RY.

(Supreme Court, Appellate Division, Third Department. May 5, 1896.)

1. STREET CARS—INJURY TO PERSON CROSSING TRACK.
   Failure to look for approaching car before crossing electric car track is negligence.

2. SAME—CONTRIBUTORY NEGLIGENCE.
   The duty of a person crossing a street-car track to look for an approaching car is not dispensed with by the fact that the railroad company has a rule that when a car is standing at a street crossing an approaching car must not pass, but must come to a full stop.

Appeal from circuit court, Albany county.

Action by John Doyle against the Albany Railway for personal injuries. From a judgment entered on a verdict in favor of plaintiff, for $1,726.65 damages and costs, and from an order denying a motion for a new trial, made on the minutes, defendant appeals. Reversed.

Argued before PARKER, P. J., and EDWARDS, MERWIN, and PUTNAM, JJ.

Rosendale & Hessberg (S. W. Rosendale, of counsel), for appellant. John H. Gleason, for respondent.

EDWARDS, J. From the plaintiff's testimony, it is evident that his injury was, at least in part, the result of his negligence. He was a passenger on one of the defendant's electric cars running from Albany to Troy. The defendant's road has two tracks; the cars for Troy running on the easterly, and those for Albany on the westerly, track. At Ward's Lane, about half a mile from the city of Albany, the car stopped, to permit the plaintiff and his companion, Hughes, to alight. The plaintiff alighted from the easterly side of the car, preceded by Hughes, and, as soon as he reached the ground, the car in which he had been riding started, and rapidly proceeded on its way northerly. To reach his residence, it was necessary to cross both tracks, with the location of which and with the running of the cars he was familiar. After he had crossed the easterly track, he came to a space of five feet between that and the westerly track. One of the defendant's cars coming down from Troy on the westerly track was then approaching. It was about 10 o'clock at night, and dark. This down car was lighted with electric light, had a large headlight, and, Hughes says, "was one glare of light." While the evidence furnished very strong grounds for the

belief that this car could have been seen before the plaintiff had crossed the easterly track, it is beyond question that, from his position between the two tracks, it was plainly visible. It is inconceivable that the trolley post, eight inches in diameter, midway between the two tracks, five feet apart, could have obstructed his vision. Instead of remaining between the tracks, or stepping back upon the easterly track, until the approaching car had passed, the plaintiff proceeded to cross the westerly track, and, when nearly over, was struck by the car; his companion, who was just ahead, having reached the other side in safety.

The law is too well settled to require the citation of any authorities that it is the duty of a person, before crossing a traveled railway, to look for an approaching train; and a failure to do so, when the view is unobstructed, or crossing with knowledge of an approaching train, precludes a recovery for any injuries sustained. The plaintiff does not swear that he looked for the down car, and the conclusion is irresistible that he either did not look, or that he saw it, and miscalculated his chances of crossing in safety. The latter is very probable. Either is fatal to his recovery. There was a rule and custom of the defendant that, when a car is standing at a street crossing or station, an approaching car must not pass, but come to a full stop; but the plaintiff could not so rely upon this custom as to absolve him from the duty of vigilance. Assuming that there was on this occasion a violation of the rule, which may be gravely doubted, the plaintiff, by the exercise of that care which the law imposed upon him, would have discovered it in time to avert any injurious consequences to himself.

In Dobert v. Railway Co. (recently decided by the general term, in this department) 36 N. Y. Supp. 105, the learned judge who wrote the prevailing opinion says:

"The evidence discloses that the intestate, on passing around the rear end of this car, looked in the direction of the approaching car, * * * and which car, as would appear from the evidence, was hidden from the view of the intestate until the very moment of his fatal collision with it."

He also says:

"It was upon a crowded thoroughfare;" and "it did not appear that he was familiar with the crossing."

In respect to those facts, there is between that case and this an obvious and essential distinction.

The judgment should be reversed, and a new trial granted, with costs to abide the event. All concur.