WILHELM STABENAU, Respondent, *v.* THE ATLANTIC AVENUE RAILROAD COMPANY of Brooklyn, Appellant.

1. NEGLIGENCE — CHILD STRUCK BY ELECTRIC CAR — RUNNING ACROSS TRACK. A motorman of an electric car who sees little girls near the track start to run across it, when they have time to get across if they do not fall, is not negligent in failing to make any attempt to stop the car until one of them falls.

2. MODE OF STOPPING ELECTRIC CAR. The use of a brake by a motorman to stop an electric car in an emergency, instead of the use of the particular appliance used to govern electrical motive power, is not negligence.

*Stabenau* v. *Atlantic Ave. R. R. Co.*, 89 Hun, 609, reversed.

(Submitted March 15, 1898; decided April 19, 1898.)

APPEAL from a judgment of the late General Term of the Supreme Court in the second judicial department, entered August 8, 1895, affirming a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Eugene Lamb Richards, Jr.,* and *Arthur L. Sherer* for appellant.    No negligence on the part of the defendant, or its employees, was proven by the plaintiff, and the duty was upon the plaintiff to prove that fact affirmatively.    (*Goldschmidt* v. *Met. C. R. Co.,* 1 App. Div. 309; *Fenton* v. *S. A. R. R. Co.,* 126 N. Y. 625; *Bittner* v. *C. R. Co.,* 153 N. Y. 76; *Wynn* v. *C. P., N. & E. R. R. R. Co.,* 133 N. Y. 575; *Stabenau* v. *A. A. R. R. Co.,* 15 App. Div. 408.)    At the close of plaintiff's case there was not a scintilla of evidence showing freedom from negligence on the part of her parents or guardians, nor was her freedom from contributory negligence shown.    (*Newdoll* v. *Young,* 80 Hun, 364; *McCaldin* v. *Parke,* 142 N. Y. 564.)    The admission in evidence of the photograph of the crossing was error.    (*People* v. *Buddensieck,* 103 N. Y. 500.)

*Henry B. Johnson* for respondent.    There was no error in the refusal of the court to direct a verdict on the ground that there was no proof of negligence on the part of the defendant or its employees.    (*Coppin* v. *N. Y. C. & H. R. R. R. Co.,* 122 N. Y. 557; *W. R. R. Co.* v. *McDaniels,* 107 U. S. 454; *Wihnyk* v. *S. A. R. R. Co.,* 14 App. Div. 516; *Murphy* v. *Orr,* 96 N. Y. 14; *Moebus* v. *Herrmann,* 108 N. Y. 352.) There was no error in admitting the photograph in evidence. (*People* v. *Buddensieck,* 103 N. Y. 500; *Archer* v. *N. Y., N. H. & H. R. R. Co.,* 106 N. Y. 603.)

GRAY, J.    The plaintiff brought this action to recover for the loss of the services of his infant daughter; who was injured by a car of the defendant company, at a crossing in the township of New Utrecht, in the county of Kings.    The

plaintiff charged, in his complaint, that his daughter's injuries were due to the negligence of the defendant. He alleged that the crossing, in question, was dangerous to foot-passengers ; that the construction and mechanical appliances of the car were imperfect, and that its operation at the time was negligent.

The evidence showed the following state of facts. The plaintiff's daughter was about seven years of age. At about seven o'clock in the evening of January 19th, 1894, one of the defendant's trolley cars, on its way to Brooklyn, had left the station of Van Pelt Manor, with two motormen upon the front platform. When within less than one hundred feet of the crossing, where the accident occurred, several little girls were seen upon, or near, it. They were seen to start and to run over the crossing in front of the car. One of them, the plaintiff's daughter, fell and, immediately, the motorman applied the brake upon the car and brought it to a stop upon the crossing. The child's body was prostrate and outside of the track, at a point between the front and rear wheels. Upon raising up the child, examination showed that her foot and ankle had been struck by some part of the running-gear and injured. Although there is no direct evidence as to how she had fallen, it might be inferred that her foot had been caught between the outside rail of the track and the plank of the crossing, with the effect that she had been unable to extricate it and was thereby thrown down. The crossing, upon which the child was injured, was used for traffic and the planks had become worn and broken in places. At the point where the child fell, there was a space between the outside rail and the adjoining plank of from 2 to 3 inches. There was a crossing for foot-passengers ; but, for the purposes of this case, the child may be assumed to have been rightly upon the traffic crossing, and the question of the defendant's negligence is to be solved by the conduct of the motorman when approaching the crossing. Of the two men upon the front platform of this car, one was acting as instructor of the other and he was the principal witness for the plaintiff. According to his testimony, the little girls were seen that evening at a distance of

from 50 to 75 feet away. As soon as they saw the headlight of the trolley car, they commenced to holloa and to run over the crossing in front of the car; when one fell down. As soon as that was seen to occur, the power was shut off and the brake applied upon the car. The car was going at the usual rate of speed, through a rural district, and, although it was possible to have stopped it before reaching the crossing, there was, obviously, no occasion to do so, until the child was seen to fall. It is true that the motorman, who was at the brake, was new; but he was not inexperienced in the handling of cars and the plaintiff's witness testified that he acted promptly and did the best he could with the brake. Indeed, according to his evidence, his companion, the motorman, started to apply the brake just as soon as he saw the children. His car appears to have been so well under control that, in what must have been but the briefest instant of time, after the fall of the child upon the crossing, he was able to bring it to a stop upon the crossing, and before its length had passed the child's body. How the motorman could have acted differently, it is difficult to see. No negligence was attributable to him, because he did not apply the brake before the child fell; for it was then, for the first time, that the peril became apparent. That was the principle of our decision in *Fenton* v. *Second Ave. R. R. Co.* (126 N. Y. 625). In that case, the child, while running across the street in front of a car, fell and was killed by the car passing over his body. It was observed, in the opinion, to the effect that the driver of the car, when he saw the boy approaching the track, had the same reason to suppose that he would get across, that he had, and that the boy probably would have crossed in front of the horses in safety, if he had not fallen. It may be observed in the present case, if the little girl had not run, she probably would not have fallen, and if she chose to run across in front of the car, it was because she believed it was possible to do so. The motorman had the same right to believe so and it was the fact; as shown by the other little girls having passed over in safety. Nothing required of this little girl that she should run over

the crossing in front of the car.  She might have waited for
the car to pass; but having preferred to run with her com-
panions, she could have reached the other side of the track, if
she had not fallen.  Whether her fall was from her foot being
caught, or from merely tripping, is not definitely known; nor
is it, perhaps, material upon the question of the defendant's
negligence; because, until she was seen to fall, the motorman
was under no obligation to bring his car to a stop.  It was
essential, in this case, to show that the defendant's servant,
while engaged in the operation of the car, committed some
act which he ought not to have done, or omitted some act
incumbent upon him.  As I regard the case, I fail to discover
wherein any negligence was attributable to the defendant,
which was the proximate cause of the accident.  Nor can
negligence be predicated upon the use by the motorman of the
brake, instead of the particular appliance used to govern the
electrical motive power.  In the emergency, one of two courses
was open to him and it is impossible to say that the one adopted
was not as effectual as the other, under the circumstances.  It
appears by the evidence that a sudden reversal of the electric
power sometimes operates, as the plaintiff's witness said, "to
blow out the fuse;" in which case, the power to control is lost.
The motorman testified to having heard of that happening often.
Whether the one or the other means, provided for stopping the
car, should have been adopted, was a matter for the exercise of
the motorman's judgment and, though newly employed, he was
not shown to be incompetent.  For an error in its exercise,
the defendant could not be held responsible.  Even the failure
to have exercised the best judgment, would not have been evi-
dence of negligence.  (*Bittner* v. *Crosstown St. R. Co.*, 153
N. Y. 76; *Wynn* v. *Central Park, etc., R. R. Co.*, 133 N.
Y. 575.)

I think the evidence was altogether insufficient to hold the
defendant responsible for this accident, and, therefore, that
the judgment should be reversed and a new trial ordered, with
costs to abide the event.

All concur, except BARTLETT and VANN, JJ., dissenting.

Judgment reversed, etc.