## WHITE v. ALBANY RY.

(Supreme Court, Appellate Division, Third Department.  November 16, 1898.)

ELECTRIC RAILROADS—NEGLIGENCE OF MOTORMAN—CHILD ON TRACK—BURDEN OF PROOF.

In an action against an electric street railway for killing a six year old boy, the negligence alleged was the omission of the motorman to stop the car before striking the child.  The car was running at a speed not to exceed the prohibited rate of more than 12 miles an hour.  Plaintiff's evidence showed that, when the car was 71 feet from where the boy was struck, the boy had passed onto the outside rail, and was running directly across the track, but was struck when he had nearly reached the inside rail.  The rails were not quite five feet apart, and, if plaintiff's evidence was true, the car traveled more than 17 times as fast as the boy, which would make its speed at least 34 miles to the hour (assuming the boy was running at the rate of 2 miles an hour), which was incredible, in view of the finding that it was not going faster than 12 miles per hour.  The motorman testified that when he first saw the boy he was running diagonally by the car, and, "quick as a shot," ran and fell over the rail. and that he immediately lowered the fender and applied the brakes, but to no avail.  There was no evidence that the motorman saw the boy, or heard any warning concerning him, except his own testimony.  Held, that a verdict for plaintiff should be reversed, since it was as reasonable to infer the motorman was not negligent, as the contrary, and the burden of proof was on plaintiff.

Appeal from trial term, Albany county.

Action by Michael J. White, as administrator of the goods, chattels, and credits of John White, deceased, against the Albany Rail-

way. From a judgment entered on a verdict for plaintiff, and from a motion denying a new trial, defendant appeals. Reversed.

Argued before PARKER, P. J., and LANDON, PUTNAM, and MERWIN, JJ.

Simon W. Rosendale, for appellant.
P. C. Dugan, for respondent.

PARKER, P. J. The plaintiff's claim that the death of his son was caused by the negligence of the defendant is based upon two alleged facts, viz.: Excessive speed of the car, and negligent omission of the motorman to stop the car before striking the child. As to the speed of the car, the city ordinance permitted a speed of 12 miles an hour at the place where the accident happened; and, if the car did not exceed that speed, negligence cannot be imputed to the defendant on account of its speed alone. In that case it was not running in violation of any law or ordinance, and that rate of speed, in itself, and under the circumstances of this case, was not so excessive as to warrant a jury in holding it negligent. The trial judge, at defendant's request, charged the jury that there was no evidence that the speed of the car exceeded 12 miles an hour. To this charge there was no exception taken, and in my judgment the great weight of evidence is that it was not exceeding that rate of speed. The fact to which the trial judge called the attention of the jury in that connection, that Mulligan, an uncle of the deceased, and plaintiff's witness, testified that he was following the car when it struck the boy, with his horses on a walk, and that he had gone 175 feet while the car went 225 feet, is strong evidence upon that question, and, taken in connection with that of defendant's witnesses, places it beyond doubt that the speed was within the required limit of 12 miles an hour. But, whether it was or not, we must suppose that the jury accepted that instruction, and based their verdict upon a state of facts which assumes such to be the case; and, in determining whether their verdict can be sustained, we must consider the case from the same standpoint.

Assuming, then, that the speed does not indicate negligence on defendant's part, and did not exceed 12 miles an hour, the remaining question is whether it has been shown that the motorman omitted to do anything which he reasonably ought to have done, and which in the exercise of the requisite care he could have done, to prevent the car from hitting the boy. Two tracks of the defendant's railway run north and south through the middle of Broadway. The car which struck the deceased was going north on the easterly track, and the deceased was run over while attempting to cross from the east to the west side of the street. The witness Hayes gives the situation upon which the plaintiff relies to establish negligence against the motorman substantially as follows: He was walking up Broadway on the east side, and when he was at the southeast corner of Manor street the car flew by him, and the conductor was on the walking board, "hollering." (That corner is 120 feet south of where the boy was struck.) At that moment he saw the boy, near the

east rail, going directly west, as if to cross the track. When the car had got to Blakeslee's crossing, which is 71 feet south of where the boy was struck, the boy had passed onto the east rail. From this point he watched him proceed west till he had nearly reached the west rail, when the car struck him. That all the time the boy was in plain view of himself and of the motorman. He also says the boy was going straight across the tracks, and at a lively gait for a little boy. Other of the plaintiff's witnesses say that the boy was running as "fast as his little feet would carry him." The witness also testified that no apparent effort was made to stop the car until the boy was struck. On these facts the plaintiff claims that the boy entered on the track in plain view of the motorman, and 71 feet ahead of the car, and that the conductor shouted out a warning as the boy was about to enter on the track, and as far away as 120 feet; that the motorman was therefore clearly negligent in not seeing the boy and stopping the car before it struck him. It is to be noticed that when the boy passed upon the east rail he was running straight across the track, and he continued at the same speed and in the same direction until he was hit. The rails were 4.72 feet apart, and hence he had passed a distance of 4 feet, "nearly to the west rail," while the car had traveled the 71 feet from Blakeslee's crossing; that is, the car traveled more than 17 times as fast as the boy. There is no evidence as to just how fast the boy was going, but he could run that 4 feet in 4 or 5 steps, at most, and it would be entirely consistent with human experience to assume that he traveled at the rate of 4 miles an hour. At that rate the car must have traveled at the rate of over 68 miles an hour, to strike him as it did. And, if we assume that the boy was running at the rate of only 2 miles an hour, the car must have run at the rate of over 34 miles an hour. That the car was traveling at either of these rates is utterly incredible. The great weight of evidence in the case, as well as the practical concession of the plaintiff above alluded to, forbids that conclusion; and a statement that requires us to believe that the car was running as fast as 34 miles an hour must be at once rejected. We cannot accept the statement of plaintiff's witnesses as to the relative position of the car and the boy when he entered upon the track. The car could not have been 71 feet from him, and the motorman did not have all that distance in which to stop the car. If their statement is not to be credited, then the jury were compelled to guess at the situation, or accept the version of the defendant's witnesses as to the circumstances under which the boy was hit. The statements of both the motorman and the conductor (although they, on cross-examination, are somewhat inconsistent) as to their estimate of distances is clear, to the effect that the boy darted suddenly onto the track, just ahead of the car. The motorman testified that when he first saw him he was running along diagonally by the car, and as quick "as a shot," "like the snapping of a finger," he ran and fell over the east rail; that he instantly let down the fender and applied the brakes, but the boy was too near the car to be saved. Under such circumstances, negligence could not justly be charged against the motorman. Nor can it be said that he was negligent in not seeing

the boy before he got upon the track. Undoubtedly, it was the duty of the motorman to use all the means in his power to prevent the car from striking the boy, and to begin the use of such means as soon as the danger of hitting him became apparent. But he could not justly be charged with negligence in not stopping or beginning to stop the car until it became reasonably apparent to him that the boy was in peril unless he did so. Stabenau v. Railroad Co., 155 N. Y. 511, 50 N. E. 277. And such is the measure of responsibility we must apply to the motorman in considering this case. The motorman's attention is required first to the track, to see that it is clear, and to the cross walks where people are expected to pass over the track or to get aboard the car. In this case they were just about entering a switch where a down car might be passed, and a cross walk was about 124 feet ahead of them; also, a railroad crossing at grade, where the car must come to a full stop. Now, all these demanded the attention of the motorman. They were points on the track, and which it was his first duty to watch. And if until he was close upon him he had omitted to notice a boy on the street, and to apprehend that he was about to cross the track and so incur a peril, it surely ought not, under the rule above stated, to be charged as a negligent omission against him. It must be remembered that, although his car was lighted up and plainly visible, it was already dusky, and the vision ahead of him on the track demanded more than ordinary attention. Nor does the plaintiff charge negligence against him on that account. His complaint is based on the theory that the motorman, after the boy passed onto the track, made no effort, for a distance of 71 feet, to stop the car. If that claim could be credited, it would present another question. Moreover, if we concede that the boy ran upon the track, and across it, nearly to the west rail, just as the witness Hayes states it, it is plain that the car actually ran the distance it was south of the boy when he entered upon the east rail—whatever that distance may have been—while the boy was running about four feet. If we assume that the boy was going only two miles an hour, which is certainly most favorable to the plaintiff, he would have gone that four feet in less than two seconds; that is, the motorman had less than two seconds to see the boy, realize the danger, and begin to stop the car. Such a situation is not very different from that stated by the motorman himself. Two seconds is a short time to comprehend a situation of danger and avoid it, and an inference that the motorman was negligent in not stopping the car and saving the boy in that space of time should not prevail. Although the witness Hayes claims that no effort was made to stop until the boy was struck, because he saw no sparks fly until then, it is plain that within the two seconds the motorman may—as he says he did—have lowered the fender and started to apply the brakes, without any of that effort being apparent to Hayes, at the distance he was from the car. It must be remembered that there is no proof that the motorman did see the boy, or hear any warning concerning him, before the time when he says he saw him. The negligence claimed rests entirely in inferences to be drawn from the situation proven, and the burden is with

the plaintiff to prove that situation by a preponderance of evidence; and if, from the situation which the plaintiff's evidence discloses, it is as reasonable to infer that the motorman was not negligent as to infer that he was, the plaintiff has failed to establish his case. Ruppert v. Railroad Co., 154 N. Y. 90, 47 N. E. 971; Cadwell v. Arnheim, 152 N. Y. 182, 190, 46 N. E. 310. On the whole case, it seems as if the jury must have misapprehended the situation. They have charged negligence against the motorman, when neither justice nor an intelligent appreciation of his duties and the possibilities of the case warrant it. It is a case well calculated to inspire their sympathies, but, as it appears from this record, not one where the death was caused by the negligence of defendant's agents.

Without discussing the very serious question whether contributory negligence causing his death should not be charged against the boy, I conclude that for the reasons above stated the verdict of the jury was wrong, and the judgment entered thereon should be reversed.

Judgment reversed; new trial granted; costs to abide the event. All concur.