MEHRLE v. BROOKLYN, Q. C. & S. R. CO.

(Supreme Court, Appellate Division, Second Department. March 8, 1901.)

STREET RAILROADS—INJURY TO PEDESTRIAN—NEGLIGENCE—EVIDENCE.
    A person whose hearing was not good was walking along a footpath
    near a street-car track, and suddenly started diagonally across the track,
    when an approaching car was about 10 feet away, and was struck by
    the car fender. He could not say that he had looked around within five
    minutes of the time of the accident. He heard no gong. The car was
    going at from four to seven miles an hour, and was stopped within half
    its length after striking plaintiff. The gong was rung repeatedly from
    a distance of 250 feet up to the place of the accident. The car fender
    was 3 feet long and extended a little over the track. Held, that a verdict
    for the plaintiff was contrary to the weight of the evidence.

Appeal from trial term, Kings county.
Action by Henry Mehrle against the Brooklyn, Queens County &
Suburban Railroad Company. From a judgment in favor of plaintiff,
defendant appeals. Reversed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCH-
BERG, JENKS, and SEWELL, JJ.

John L. Wells, for appellant.
Abram H. Dailey, for respondent.

JENKS, J. This action is based upon negligence, and the appeal
is from a judgment entered upon a verdict for the plaintiff for $500
damages for personal injuries. The plaintiff complained that while
a traveler on a public street in the borough of Brooklyn he was struck
by a car of the defendant because of negligence and carelessness in
running and operating said car at a "high, unlawful, and dangerous
rate of speed, in utterly failing to ring any bell or give any signal
of its approach, although the plaintiff was in plain sight of defend-
ant's motorman, who knew and saw the position in which plaintiff
was placed by reason of the obstructed condition of the street along
which he was walking, and that defendant was also negligent in hav-
ing and maintaining an unnecessarily wide fender upon said car, ex-
tending beyond said car onto the street." The plaintiff's case rests
upon his own testimony. He did not show that just previous to the

accident the speed of the car was "high" or "unlawful" or "danger-ous." On the other hand, the conductor of the car, who, at the time of the trial was not in the employ of the defendant, testifies that the rate of speed was moderate,—about four or five miles an hour. The motorman, who had also, at the time of the trial, left the defend-ant's service, testifies that the car was not going fast,—about six or seven miles an hour, and not better than the regular time. Mrs. Wood, a passenger who traveled on the road a great deal, testifies that the car was going at an ordinary rate of speed,—the rate generally traveled. Mrs. Jann, a passenger, testifies: "This car was just the right sort; it was too slow for me. I wanted to go faster, because I wanted to go quicker." The plaintiff testifies, on cross-examination: "Q. And the car stopped pretty quick, didn't it, Mr. Mehrle, after you fell into it? A. Well, it wasn't long; and I was still in the fender when the car stopped." When the car stopped, the conductor saw him "laying down alongside of the car, * * * eight or ten feet from the front end of the fender." The motorman said that they went the length of the fender after the plaintiff was struck, and that he "was right by close to my fender when I stopped." Mrs. Wood says that after the car struck the plaintiff it went about half a car's length. "The car didn't go more than half its length." Mrs. Jann said that when the car stopped the plaintiff was "up in the middle of the car"; he was "right in the middle of the car." The car went, after he fell, "half the length of the car."

The next question requires an examination of the testimony as to whether the defendant "utterly failed to ring any bell or give any signal of the approach" of the car. The plaintiff says that he did not hear the car. "My hearing isn't as good as when I was young. I know it ain't good. * * * I didn't hear any noise whatever." The motorman testifies: "I got up to 200 or 250 feet—something like that—away from him when I started to ring the bell;" and that at the time the plaintiff "slanted up the track" he was ringing the bell. "I rang the bell. I rang about two hundred feet. All the while I was ringing that bell. We had the gong that we generally have on a trolley car." Mrs. Jann testifies that "the bell was ring-ing before, when the man was walking along, but whether it was in that minute I don't know. The bell was ringing when the man was walking. When the motorman see the other man walking, he rang the bell." On rebuttal, the attention of plaintiff was first called to the ringing of the bell by the following question: "Q. He [the motor-man] testified that he rang the gong, sounding the gong clear up to the time when he came up to you, and you turned around and looked right towards this car, just before it hit. Is that so? A. No, sir." This question embodies further facts than whether the bell was rung, and the answer is not a categorical denial of the testimony that the bell was rung. In any event, it is entirely negative in its character, and raises no question for the jury (Van Patten v. Railway Co., 80 Hun, 494, 30 N. Y. Supp. 501); for it does not appear that the plain-tiff was either watching or listening or looking for the signal. See, too, De Graw v. Railroad Co., 49 App. Div. 29, 31, 63 N. Y. Supp. 296.

There is no evidence that the defendant had and maintained an unnecessarily wide fender on the car. The only testimony touching the fender is that of the conductor on cross-examination, that the fender was "about three feet long, and one of those rope fenders," and the testimony of the plaintiff that the fender "extends a little over the track."

The plaintiff, while walking on Manhattan avenue (on which there was no sidewalk), near the car tracks, came to a puddle of water, with some stepping stones therein, and was crossing on the stepping stones, when the car came up behind him, and the right-hand-side of the fender struck his left leg. It had rained the night before, and the puddle was 10 or 12 feet long, and from 3 to 5 feet wide, extending up to the track. His counsel asked him:

"Why didn't you walk around on the right-hand side of this puddle of water? A. I didn't hear no car behind me. There was a path over to the right of this puddle of water, but it wasn't even. * * * There was a dump. * * * I am sure I looked more than once back. * * * I can't say exactly whether I looked back within five or six minutes at the time the car came along."

The motorman testifies that "he took a sort of slant up towards my track."

Mrs. Wood, a passenger, testifies:

"I first saw this old gentleman walking along the road, on the foot path. For a long distance I saw him walking there. I saw him when he changed his course. He started to cross the street diagonally from right to left. He was walking along the road, and attempted to cross the track diagonally from right to left, as near as I can tell about eight or— The car, when he attempted to cross, was about eight or ten feet more—at least that much—away, in my judgment. * * * and that was the time when he turned and started to cross the track; attempted to cross diagonally across the track. * * * I saw the car when it came in contact with the man. It seemed to be about the right-hand corner of the fender, at the front of the fender. * * * He was on the footpath when he started to cross. * * * He walked diagonally, when he changed his course almost a direct angle."

The witness Jann gave substantially the same testimony, adding that "he didn't make much steps to the car, because if he had made many steps he would have come over."

The plaintiff himself, on cross-examination, was interrogated on this subject, and fenced with counsel:

"Q. Did you make any effort to get over across the street before you were struck with this car? A. How the deuce could I, when I didn't hear the car striking me? How could I make any effort? Q. At the time you were struck with the car, did you start to cross over on the other side of the street? A. I always wait until the car passes by. Q. Did you at any time start to cross over to get on the other side, or to get over on the other side of the track, on Metropolitan avenue? A. I may have tried that, but when I saw that it wouldn't help I stayed back. Q. You may have tried to get across, and when you saw you couldn't— A. Well, then, I stayed back. Q. And how wide— what space was there—between the right-hand railway track and the puddle of water? How much space was there? A. The water went up to the track."

I cannot put my finger upon any negligence of the defendant. I think that the motorman was not bound to foresee that this wayfarer, who had been walking in the street, without a sidewalk, parallel with the tracks, would suddenly deflect his course, and step to the left in the puddle, and onto the railroad track, especially as there

was a path, though an uneven one, at his right hand. The evidence is clearly preponderant that the motorman rang the bell, and proceeded slowly, and stopped, after the plaintiff was hit by the fender, within a very few feet. Unless the motorman was bound to bring the car to a standstill when he saw the plaintiff, or at some time as he approached him, and before the plaintiff even sought to turn into the track, I see no fault to be attributed to his conduct. The car could not turn out of the tracks. And the rule did not require the motorman to employ every possible precaution, but only such precaution as a reasonable man would exercise. Schmidt v. Railway Co., 132 N. Y. 566, 568, 30 N. E. 389. The danger of collision could not have been apparent until the instant when the plaintiff changed his course, and then the car was only 8 or 10 feet away. Until that time, then, he was not called upon to bring his car to a standstill. Stabenau v. Railroad Co., 155 N. Y. 511, 514, 50 N. E. 277; Fenton v. Railroad Co., 126 N. Y. 625, 26 N. E. 967. The motorman was not bound to assume that the plaintiff would recklessly or heedlessly walk into danger. Hickman v. Railroad Co., 36 App. Div. 376, 56 N. Y. Supp. 751; citing Chrystal v. Railroad Co., 105 N. Y. 164, 11 N. E. 380. On the other hand, the plaintiff failed to show reasonable care on his part. He did say that he "looked back several times." He also says that he didn't hear any car. But the record of his cross-examination reads: "Q. Didn't you know that, as you walked along the track there, there was apt to be a car come up from behind any time? A. I wasn't thinking of that." On redirect examination he was asked: "Q. About how many times did you look back? A. Oh, maybe I looked back a dozen,—maybe more, maybe less; I don't know." On recross-examination he said: "I can't say exactly about this looking. Every time when I am out I look around. Why, even if I walk on the sidewalk, and not on the railroad track, and I hear something behind me, I look around to see what is behind me. * * * Q. You didn't make any particular note of this day or of any other day? A. Why, I couldn't, nor no other living man, I think." The plaintiff also testifies: "My hearing isn't as good as when I was young; I know it ain't good." But we said in Hickman v. Railroad Co., supra, per Woodward, J.: "And the fact, if it was a fact, that she [the plaintiff] was somewhat hard of hearing, only increased her obligation to make such use of her eyes as was intended to avoid danger." I think that the plaintiff fell short of the reasonable care and caution due from him under the circumstances. McClain v. Railroad Co., 116 N. Y. 459, 465, 22 N. E. 1062; Jager v. Railroad Co., 84 Hun, 307, 32 N. Y. Supp. 304; Doyle v. Railway Co., 5 App. Div. 601, 39 N. Y. Supp. 440. For these reasons, I am of opinion that we are justified in reversing this judgment, as the verdict was flagrantly against the weight of evidence. Colvin v. Railroad Co., 32 App. Div. 76, 52 N. Y. Supp. 698.

Judgment and order reversed, and new trial granted, costs to abide the event. All concur, except SEWELL, J., taking no part.