stock issued, there appears to be no difficulty in the way of affording injunctive relief. The case is somewhat different, however, with reference to the bonds and stock already issued. As to that two questions may arise: First, the right of the corporation—for this action is brought by a stockholder in its right—to rescind; and, second, whether the bonds and stock have reached the hands of an innocent purchaser for value, who may, in any event, be entitled to protection to the extent of the value paid therefor. If this, instead of being an executed contract, were an executory contract between the corporation and a purchaser for the sale and purchase of these bonds with the stock as a bonus, and the corporation refused to perform, we think it clear that the purchaser could not enforce performance; but, it being an executed contract, the corporation probably cannot rescind in any event without returning the moneys received by it, and we are not informed as to whether it is in a position to do that. Furthermore it appears that the defendant Ernest F. Greff, Jr., has sold the stock and bonds to the copartnership of Greff & Co., of which he is a member, although the stock still stands in his name on the books of the company, and the other members of the firm are not parties. ·It may be that, even if the corporation is not in a position to rescind as to the consummated transaction, in the interests of future creditors the court should enjoin the further transfer of the stock to prevent the same reaching the hands of bona fide purchasers without notice. These questions, however, should not be decided on this appeal.

It follows that the judgment should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.

———————

(82 App. Div. 13.)

### KAPPUS v. METROPOLITAN ST. RY. CO.

(Supreme Court, Appellate Division, First Department. April 9, 1903.)

1. STREET RAILWAYS—PERSONS ON TRACK—CONTRIBUTORY NEGLIGENCE.
     Where one crossing a street in the nighttime was run over by a street car, which was lighted and had been in sight from the time he started to cross the street, he was guilty of contributory negligence.

2. SAME—COMPLAINT—SPECIFIC INJURIES—EVIDENCE.
     Where, in an action against a street railway company for injuries, the complaint alleged that the car ran over plaintiff, cutting off an arm and mutilating a foot, and "otherwise dangerously and permanently injuring him," evidence as to injury to plaintiff's nerves was admissible.

8. SAME—INSTRUCTIONS—NEGLIGENCE—DUE CARE.
     In an action against a street railway company for injuries from being run over by a street car, it was error to refuse to charge that if the motorman, while operating his car with ordinary care, stopped his car as soon as he discovered that plaintiff was about to step in front of the car, plaintiff could not recover.

Appeal from Trial Term, New York County.

Action by Gottlieb Kappus against the Metropolitan Street Railway Company. From a judgment for plaintiff, and from an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, PATTERSON, and LAUGHLIN, JJ.

Charles F. Brown, for appellant.
Everett P. Wheeler, for respondent.

McLAUGHLIN, J.   The plaintiff was seriously injured on the 8th of March, 1899, at about 7 p. m., by a collision with one of defendant's north-bound cars at Ninety-First street and Second avenue, in the city of New York, and he brought this action to recover damages by reason thereof upon the ground that the same were caused by defendant's negligence.   He had a verdict for $15,000, upon which judgment was entered, from which and order denying a motion for a new trial defendant has appealed.

We think this judgment must be reversed for the following reasons:   (1) Plaintiff's own negligence contributed to his injuries;  (2) error in admission of evidence;  and (3) error in refusing to charge as requested by defendant;  and which will be considered in the order named.

1. It may be assumed that the evidence was sufficient to sustain the finding that the defendant was negligent, but this, of itself, did not entitle the plaintiff to a verdict.   He was bound to show, in addition to this, that his own negligence did not in any way contribute to his injuries, and this, we think, he failed to do.   On the contrary, his own testimony, taken in connection with the testimony of the witnesses produced by him who saw the accident, established that if the motorman of the car was negligent in not preventing the collision the plaintiff was also negligent in contributing to it.   The plaintiff testified, in substance, that he got off one of defendant's south-bound cars at Ninety-Second street, and then walked to the southwest corner of Ninety-First street, and while standing upon this corner he looked north and south, and did not see any car, except one which was going south, and which was then between Ninety-First and Ninetieth streets; that he then walked slowly east on the south cross-walk, and before he reached the south-bound tracks he again looked, and did not see any car; that he did not look again until after he stepped upon the north-bound tracks, when he observed a north-bound car almost upon him, and he then jumped, and was struck by the east side of the fender, thrown against an elevated railroad pillar which stood in the middle of Ninety-First street, and rendered unconscious; that it was dark at the time the collision occurred, but except for that there was nothing in the street to obstruct his view to the south, and he was unable to see whether or not the car was lighted; that he did not hear a bell or other signal given before he was struck.

The plaintiff produced two witnesses who saw the collision, Pick and Sullivan.   The former testified that he was at the time standing on the southeast corner of Ninety-First street; that he saw the plaintiff standing on the southwest corner, and that he observed he looked north, and then started to pass over the tracks; that at that time the north-bound car was about 10 feet north of Ninetieth street; that the car was lighted, and was plainly visible; that he next noticed the car when it was about in the middle of the block, between Ninety-First and Ninetieth streets, and that the plaintiff was then stepping on the

west rail of the south-bound track; that he observed that the plain-
tiff did not stop or look south, and that when he stepped on the north-
bound tracks the car was only two feet away from him.   This witness
further testified that there was nothing to obstruct plaintiff's view of
the north-bound car, and that when the fender struck him he was
thrown against an elevated railroad pillar with such force that the
rebound threw him under the car, and thus the injuries complained of
were sustained.   The latter testified that at the time of the collision
he was standing west of the south-bound tracks in the middle of Nine-
ty-First street; that he observed the plaintiff from the time he left the
corner of the sidewalk until he was struck by the car, and that he did
not look in any direction after he left the corner; that when the plain-
tiff reached the space between the north-bound and south-bound
tracks the witness then observed the car coming, and, to use his own
language, "I said to myself that man is going to get run over;" that
when the plaintiff stepped on the north-bound tracks the car was very
close to him—so close, to again use the language of the witness, "I
knew he would get hurt."

Taking this testimony all together, it is clear that the plaintiff did
not exercise the care which the law required of him before stepping
upon the north-bound tracks, and, had he done so, he would not have
been injured.   The fact that the car was lighted, and that it was vis-
ible from the time plaintiff left the corner until he was struck by it,
is not disputed, and had he looked in that direction he could have seen
it.   Manifestly, if the defendant's motorman was negligent in not
seeing the plaintiff in time to avoid the collision, then the plaintiff was
equally guilty of negligence in not seeing the car before he stepped
upon the north-bound tracks.   It is true he says he looked, but, if
he did, no explanation is even suggested why he did not see the car.
The street was unobstructed, the car was lighted, and his witnesses to
the accident had no difficulty in seeing the car when it was at or near
Ninetieth street.

The case, in this respect, is much like Madigan v. Third Ave. R.
R. Co., 68 App. Div. 123, 74 N. Y. Supp. 143, in which Van Brunt,
P. J., said:

"It is difficult, upon this evidence, to see how the plaintiff met the burden
of showing that he was not guilty of contributory negligence in not seeing
the car, or, if he was free from contributory negligence, how the defendant
was guilty of negligence in not seeing the plaintiff.   If the plaintiff was unable
to see a fully lighted car, how was it possible for a motorman to see a person
attempting to cross the track?   It cannot be that a party going upon a rail-
road track, who claims to have looked and not to have seen an object in
plain sight, has complied with the requirements of the law as to the exercise
of due caution."

See, also, Mehrle v. The Brooklyn, Queens County & Suburban
R. R. Co., 59 App. Div. 617, 69 N. Y. Supp. 210; Johnson v. Third
Ave. R. R. Co., 69 App. Div. 247, 74 N. Y. Supp. 599; Biederman v.
Dry Dock, East Broadway & Battery R. R. Co., 54 App. Div. 291, 66
N. Y. Supp. 594.

The truth is the plaintiff carelessly stepped upon the north-bound
tracks without looking to see whether a car was approaching, and in
this way the accident occurred.   Had he looked the accident would

have been avoided. This being the situation at the close of plaintiff's case, defendant's motion for a nonsuit should have been granted.

2. The complaint, after alleging that the car knocked him down, set forth the injuries received by the plaintiff as follows: "Run over him, cutting off plaintiff's right arm, mutilating his right foot, and otherwise dangerously and permanently injuring him." During the course of the trial a physician who prescribed for the plaintiff some time after the accident was asked what he had done for him during that time, and he answered: "I have prescribed for him for his nerves." Defendant's counsel thereupon moved to strike out this testimony, upon the ground, in substance, that it was inadmissible under the allegations of the complaint. The motion was denied and an exception taken. This testimony should have been stricken out. It is sought to sustain the ruling upon the ground that the words in the complaint, "otherwise permanently injured," were comprehensive enough to admit proof of injury to the nerves. A similar contention was made in Geoghegan v. Third Ave. R. R. Co., 51 App. Div. 369, 64 N. Y. Supp. 630. There the complaint alleged that "by reason of said collision the plaintiff had sustained severe wounds and bruises to his head, right hip, left arm, back and other parts of his body; that his spine had been injured; that his brain had been injured, and that he had been informed and believed that he had sustained other severe internal injuries;" and this court held that it was error to admit evidence tending to prove permanent injuries to the eye. And to the same effect is Hergert v. Union Railway Co., 25 App. Div. 218, 49 N. Y. Supp. 307, and Kleiner v. Third Ave. R. R. Co., 162 N. Y. 193, 56 N. E. 497.

Here, there was nothing in the complaint which called attention to any injury to the nerves, and if the plaintiff had been injured in that respect then he should have set out that fact by appropriate allegations. The rule seems to be well settled that unless the injuries for which damages are sought necessarily and naturally result from those described in the complaint they must be alleged as special damages, or a recovery cannot be had therefor. The injury to the nerves for which damages was claimed was not the necessary result of any of the injuries described in the complaint, and it was therefore necessary, if the plaintiff sought to recover for these special and not inevitable results of the injury, to allege them as special damage.

3. At the conclusion of the trial the learned trial justice was requested by the defendant to charge the jury: "If the motorman of the north-bound car, while operating his car with ordinary care, stopped his car as soon as he discovered that the plaintiff was about to step in front of his car, defendant is entitled to a verdict"—which he refused, and an exception was taken. We think this was error. Under the facts presented in this case, If the motorman was operating his car with ordinary care, and stopped it as soon as he observed the plaintiff was about to step upon the north-bound tracks, this is all he was required to do, and the jury should have been so instructed. What else should the motorman have done? He was obliged to move the car, exercising care, however, in doing it so as not to injure persons crossing the street, but he had a right to assume that persons crossing the street

would exercise as much care for their own safety as he was required to exercise not to injure them. If he did exercise this care, and stopped the car as soon as he discovered that the plaintiff was about to step in front of it, it is difficult to see what more could be required of him. He certainly could not be said to be negligent because he did not anticipate that the plaintiff would be negligent. All he was required to do was to operate his car with care, and in such a way as to avoid a collision, if possible.

We are of the opinion, therefore, for the errors assigned that the judgment and order appealed from must be reversed, and a new trial ordered, with costs to the appellant to abide the event.

VAN BRUNT, P. J., concurs. LAUGHLIN, J., concurs on the first and last grounds. PATTERSON and HATCH, JJ., concur on last ground stated in the opinion.