(109 App. Div. 541)

### WALSH v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. December 8, 1905.)

1. MUNICIPAL CORPORATIONS—PERSONAL INJURIES—ICY SIDEWALK—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

In an action against a city for personal injuries resulting from an icy sidewalk, evidence *held* sufficient to take to the jury the question of plaintiff's freedom from contributory negligence.

[Ed. Note.—For cases in point, see vol. 36, Cent. Dig. Municipal Corporations, §§ 1754–1756.]

2. SAME—LEAKY HYDRANT.

. The maintenance by a city during the summer and fall months of a hydrant so leaky as to form a pool upon the sidewalk, convertible into ice by cold weather, charges the city with liability for an accident resulting from the ice so formed.

[Ed. Note.—For cases in point, see vol. 36, Cent. Dig. Municipal Corporations, § 1627.]

· Houghton, J., dissenting.

Appeal from Trial Term, New York County.

Action by Charles Walsh against the city of New York. From a judgment in favor of plaintiff and an order denying a motion for a new trial, defendant appeals. Affirmed upon condition of reduction of judgment.

Argued before O'BRIEN, P. J., and PATTERSON, INGRAHAM, CLARKE, and HOUGHTON, JJ.

Theodore Connoly, for appellant.
Archibald C. Shenstone, for respondent.

CLARKE, J. On the afternoon of November 28, 1901, the plaintiff, a practicing physician, 40 years of age, was walking up Broadway, on the easterly side. There had been no snowstorms. The streets were not icy or slippery. He was not expecting ice, and he did not see any ice. He was walking along as people ordinarily do upon the sidewalk. At the corner of Thirty-Fifth street, as he stepped from the

curb to the cross-walk, he slipped and fell heavily, breaking his right patella, and causing serious and permanent injury. It was in evidence that there was a fire hydrant in front of No. 72 West Thirty-Fifth street, about 200 feet from the corner. For a long time during that summer and fall this hydrant had been continuously leaking. As there was no culvert on that corner, the escaping water formed quite a pool, and in cold weather that water froze. It was established that on the day of the accident the ice extended from the hydrant to and across the cross-walk, in the gutter, to a width of three or four feet, and about four inches thick. It does not appear that at the cross-walk the ice extended over the curb on to the sidewalk. There was testimony that this ice was covered with dust, so that it looked like the asphalt, and was not distinguishable on casual examination. Undoubtedly, as the plaintiff stepped down from the curb, he slipped and fell on this ice caused by the overflow of the water from the leaky hydrant maintained in such condition for a long time by the city. As to the conditions existing at the time of the accident, and as to the continued existence of the leaky hydrant, there is no room for doubt upon the evidence. And the evidence tends to establish that the icy condition of the gutter and the sidewalk had existed for some time before the accident.

Wackel testified:

"Previous to the accident I had often wondered where the ice came from. I saw a number of people there slipping and falling, and I slipped myself there a couple of times, so naturally would wonder where all the ice came from, because there was no other ice any where around at the time on the street, so I looked up the street and saw there was ice all over this hydrant."

Studebacker said:

"I could not say how long that same body of ice had been there; but, when ever it was cold enough, there was always ice there because the sun would never hit that spot. The ice was between the cross-walk and the hydrant. * * * There was always a flow of water at the hydrant. * * * Previous to that I saw a lady slip there; I should judge a month before that; something like that."

Esty testified:

"Just previous to that time I noticed ice on the sidewalk on the corner of Sixth avenue and Thirty-Fifth street. There was a hydrant in front of No. 72 West Thirty-Fifth street. That hydrant was pretty well broke and leaky, and the water leaked so much, because every morning I had to get the ice pick and break the ice in front of my house so not to fall. I followed the ice up. It came from the hydrant."

The case was fairly submitted to the jury by the court, and a verdict was returned for the plaintiff for $12,500.

The defendant urges upon this appeal, as a reason for reversing the judgment, that the plaintiff did not establish his freedom from contributory negligence, and cites as a controlling authority Weston v. City of Troy, 139 N. Y. 281, 34 N. E. 780. In that case a ridge of ice several inches high, and two or three feet broad, was formed across the sidewalk by the discharge of water from a conductor on the outside of the building. An inch or two of snow had fallen the night before. The court, while holding that a case of neglect on the part of the city had been made out, said:

"There is no shred of evidence as to the exercise by the plaintiff of any care on the occasion. * * * The presumption which a wayfarer may indulge that the streets of a city are safe, and which excuses him from maintaining a vigilant outlook for dangers and defects, has no application where the danger was known and obvious. If the plaintiff did not discover the ridge, and passed along, relying upon the walk being safe, or supposing, if he saw the ridge, that it was made by compacted snow, and not by ice, these and other circumstances might have been shown to meet the burden the law places upon a plaintiff suing for negligence of being himself free from fault."

In the case at bar the plaintiff testified that he was not expecting any ice, that he did not see any ice before he fell, and that he was walking along giving just the same attention that one ordinarily pays in walking the streets; and it was in evidence that there had been no snow or ice storms, and that this particular localized bit of ice was covered with dust, so that it looked like asphalt. Those facts being in evidence, it was for the jury to say whether, under the conditions of time and place and weather, the plaintiff was not warranted in indulging the presumption that the streets of the city were safe, was not excused from maintaining a vigilant outlook for dangers and defects, and had had not shown himself free from contributory negligence.

There seems to be no defect in the case, so far as defendant's liability is concerned. It had maintained, for so long a period that notice will be implied, a leaking hydrant from which water flowed to such an extent that, by reason of the nonexistence of a culvert, a pool formed which cold weather, to be reasonably anticipated at that season of the year, converted into ice. If authority is needed, it may be found in Woolsey v. Trustees of Ellenville, 155 N. Y. 573, 50 N. E. 270, where a judgment for plaintiff was affirmed upon facts stated as follows:

"Along Cross street is a ditch, which collects the water upon the surface, which flows through a culvert in the sidewalk into Canal street. The negligence charged against the defendant was that the trustees had permitted the throat of the culvert to become clogged, and that in consequence the water flowed over on to the sidewalk and froze, and that it was upon the ice so formed that the plaintiff fell."

If it be actionable negligence to permit the throat of the culvert to be clogged so that water backs up, overflows, and freezes on the walk, to permit a hydrant to remain for a long period in such a condition that water flowing from it forms a pool and freezes upon a sidewalk or cross-walk must likewise create liability. We therefore think that a verdict for the plaintiff was warranted by the evidence. But the amount thereof was excessive and out of all proportion to the injuries sufficiently proven.

The judgment and order will therefore be reversed, and a new trial ordered, with costs to appellant to abide the event, unless the plaintiff will stipulate to reduce the judgment as entered, including interest and costs to the sum of $7,702.04; in which event the judgment as so modified and the order appealed from will be affirmed, without costs.

O'BRIEN, P. J., and PATTERSON and INGRAHAM, JJ., concur.

HOUGHTON, J. (dissenting). Notwithstanding the defective hydrant, I think it was incumbent upon the plaintiff to prove that the

city in fact knew that ice had formed from the water running therefrom, or that ice had existed from that cause, for a sufficient length of time to give the city constructive notice. The water did not make the street defective. It was only after ice had formed that it became so. The fact that the water escaping from the hydrant would naturally freeze in cold weather I do not think rendered the city liable to one slipping the moment it froze. The testimony is that the ice formed during the night preceding the morning of the accident. No actual notice of its existence was proven, and sufficient time had not elapsed to constitute constructive notice. Hence I vote to reverse the judgment, rather than to modify and affirm it.